T.C. Memo. 2000-260

UNITED STATES TAX COURT

MICHAEL A. LACHER AND JUDITH W. LACHER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1386-89.                    Filed August 17, 2000.

<u>Stuart A. Smith</u>, for petitioners.

<u>Moria L. Sullivan</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Norman H. Wolfe pursuant to the provisions of section
7443A(b)(4) and Rules 180, 181, and 183.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge:  This matter is before the Court on petitioners' Motion for Leave to File Amended Petition. Because of concessions and agreements made by the parties,[1] the sole issue remaining for decision is whether petitioners are entitled to the benefits of a settlement offer that was made available to other taxpayers who had partnership interests in SAB Resource Recovery Associates, a part of the Plastics Recycling

---

[1]     Petitioners concede that they are not entitled to any deductions, losses, investment credits, business energy investment credits, or any other tax benefits claimed on their 1981 Federal income tax return as a result of their participation in SAB Resource Recovery Associates (SAB).  Petitioners also concede that they are not entitled to any investment tax credit carrybacks to the years 1978 and 1979 that resulted from their participation in SAB.  Petitioners also concede that the resulting underpayments in income tax are substantial underpayments attributable to tax-motivated transactions, subject to the increased rate of interest established under sec. 6621(c). Petitioners stipulate that they are liable for an addition to tax under sec. 6659 for valuation overstatement for 1981 of $17,253. Petitioners also concede that the assessment period for 1981 with regard to the amount of any deficiency that resulted from any adjustment to items from SAB was extended pursuant to sec. 6501(c)(4).  Petitioners further concede that to the extent the notices of deficiency for 1978 and 1979 relate to investment tax carrybacks from the year 1981 arising from petitioners' participation in SAB, any assessments and collection of any deficiencies arising from the disallowance of such credits are not barred by the statute of limitations pursuant to sec. 6501(j).  By stipulation, respondent concedes that petitioners are not required to include in their 1978 gross income $42,935 as a recovery of income.  Respondent also concedes that petitioners are not subject to an addition to tax under sec. 6651(a)(1) for 1978.

group of cases.  Petitioners have clarified the issue by limiting their claim to the additions to tax under section 6653(a)(1) and (2).  Petitioners further concede that their only argument with respect to the additions to tax under section 6653 is that they were denied equal treatment with respect to the settlement offer, and they do not seek any further proceeding with respect to the merits under section 6653.  An evidentiary hearing in regard to this motion was held on March 6, 2000.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in New York, New York, when the petition in this case was filed. References to petitioner in the singular are to petitioner Michael A. Lacher.

The Plastics Recycling Transaction

In 1981, petitioner acquired a 4.48-percent limited partnership interest in SAB Resource Recovery Associates (SAB). SAB is part of the Plastics Recycling group of cases.  The Plastics Recycling group of cases centers about a multistep transaction involving the sale and lease of machines designed to recycle plastic scrap.  The transactions involving the plastic recyclers leased by SAB are substantially identical to those in the Clearwater Group partnership, which was the subject of Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without

published opinion 996 F.2d 1216 (6th Cir. 1993).  For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, supra.

The facts concerning the transactions in Provizer can be summarized as follows.  Packaging Industries Group, Inc. (PI), manufactured and sold six Sentinel Recyclers (the recyclers) to Ethynol Cogeneration, Inc. (ECI), for $981,000 each.  The sale of the recyclers from PI to ECI was financed with nonrecourse notes.  In turn, ECI resold the recyclers to F&G Equipment Corp. (F&G) for $1,162,666 each.  The sale of the recyclers by ECI to F&G was also financed with notes.  These notes provided that 10 percent of the note amount would be recourse but that the recourse portion would only be due after the nonrecourse portion had been paid in full.  Subsequently, F&G leased the recyclers to the Clearwater Group partnership, which then licensed the recyclers to First Massachusetts Equipment Corp. (FMEC), which sublicensed them back to PI.  PI allegedly sublicensed the recyclers to entities (the end-users), which would use them to recycle plastic scrap.  The sublicense provided that the end-users would transfer 100 percent of the recycled scrap to PI in exchange for payment from FMEC based on the quality and amount of recycled scrap.  All the foregoing transactions were executed simultaneously.

In Provizer v. Commissioner, supra, we resolved the Plastics Recycling matter as follows:  (1) We found that each recycler had

a fair market value of not more than $50,000; (2) we held that the transaction, which was virtually identical to the transaction in the present case, was a sham because it lacked economic substance and a business purpose; (3) we sustained the additions to tax for negligence under section 6653(a)(1) and (2); (4) we sustained the addition to tax for valuation overstatement under section 6659; and (5) we held that the partnership losses and tax credits claimed with respect to the plastics recycling partnership at issue were attributable to tax-motivated transactions within the meaning of section 6621(c).  See also Addington v. Commissioner, 205 F.3d 54 (2d Cir. 2000), affg. Sann v. Commissioner, T.C. Memo. 1997-259.

We have decided many Plastics Recycling cases that, like this case, involve the question of additions to tax for negligence.  See, e.g., Greene v. Commissioner, T.C. Memo. 1997-296; Kaliban v. Commissioner, T.C. Memo. 1997-271; Sann v. Commissioner, T.C. Memo. 1997-259 n. 13, affd. sub nom. Addington v. Commissioner, 205 F.3d 54 (2d Cir. 2000).  The guidelines concerning the question of negligence in the context of the Plastics Recycling transactions are by now well established.

The Standard Settlement Offer

In approximately February 1988, respondent formulated a standard settlement offer that was made available to taxpayers in docketed Plastics Recycling cases.  On August 10, 1988, the

standard settlement offer was made available to taxpayers in nondocketed Plastics Recycling cases. See Baratelli v. Commissioner, T.C. Memo. 1994-484. The standard settlement offer allowed a deduction for 50 percent of the amount of the taxpayer's cash investment, Government concessions of the negligence addition to tax, and the taxpayer's concession of the valuation overstatement addition to tax and increased interest. The standard settlement offer expired in 1989 following the trial of Provizer v. Commissioner, supra. See Baratelli v. Commissioner, supra n.3.

Petitioner and His Involvement in SAB

Petitioner is an experienced attorney who has litigated cases for more than 35 years. Petitioner is well aware that cases can be resolved through settlement at various stages of litigation.

In 1981, petitioner acquired a limited partnership interest in SAB. As a result of petitioners' investment in SAB, they claimed a net operating loss deduction of $39,697 and investment tax credits and business energy credits totaling $82,558 on their 1981 Federal income tax return, which was limited to petitioners' 1981 income tax liability (as reduced by the partnership loss) of $58,232. The balance of the credits, $24,326, was carried back to the years 1978 and 1979 to generate tax refund claims of $11,489 and $12,837, respectively.

In notices of deficiency, dated November 4, 1988, respondent disallowed petitioners' claimed losses and tax credits that related to their investment in SAB. Respondent also determined that petitioners were liable for additions to tax under sections 6651(a), 6653(a), and 6659, and increased interest under section 6621(c).

Procedural Background

In response to the notices of deficiency, petitioners filed a petition with this Court on January 23, 1989. In their petition, petitioners claimed that they were not liable for additions to tax under section 6653 because "[the] calculation of their income tax liability for the years 1981, 1979, and 1978 and their reporting of income for those years was in no way negligent." Petitioners did not mention or suggest in their petition the argument that they were not granted equality of treatment as a ground for contesting the addition to tax for negligence.

On March 21, 1994, petitioners filed a motion for leave to amend petition. On this occasion, respondent did not object, and petitioners' motion was granted. In their amended petition, petitioners claimed that respondent was barred under section 6501 from assessing deficiencies for 1978 and 1979.

On April 1, 1994, we partially tried petitioners' case. At the trial, the parties submitted a Stipulation of Settled Issues.

The Stipulation of Settled Issues provides that petitioners are not entitled to the investment tax credits, business energy investment credits, or any other tax benefits resulting from their participation in SAB that they claimed on their 1981 Federal income tax return. Petitioners also conceded that the underpayments in income tax attributable to their participation in SAB were subject to the increased rate of interest pursuant to section 6621(c). Accordingly, the issues remaining for decision were: (1) Whether petitioners were liable for the additions to tax under section 6653(a) for 1978, 1979, and 1981; (2) whether petitioners were liable for the addition to tax under section 6659 for 1981; and (3) whether the assessments for 1978 and 1979 were barred by section 6501. At trial, again no evidence or argument was presented concerning equality of treatment. Because he was otherwise occupied on business in Europe, petitioner was not present during the trial. However, at this trial the Court received all of the evidence relevant to these issues, except for petitioner's testimony. Therefore, the Court held the trial record open for the purpose of receiving petitioner's testimony.

On October 25, 1999, the Court again calendared this case for trial on March 6, 2000. On February 23, 2000, just days before the case was called for trial and 6 years after this case was partially tried, petitioners filed their second motion for leave to file amended petition. In their amended petition,

petitioners now contend that they should be relieved of the additions to tax for negligence because respondent has a duty to afford substantially equal treatment to similarly situated taxpayers. Petitioners further contend that respondent breached his duty when he failed to offer them the so-called standard settlement offer that was made available to other taxpayers. Petitioner asserts that he was first made aware of the standard settlement offer sometime during middle or late 1999 and that he would have accepted the standard settlement offer if he had received it. At trial, petitioner failed to present evidence that demonstrates that he or his counsel attempted to settle the case. Instead, petitioner conceded that he never attempted to settle with respondent.

On March 8, 2000, the parties filed an amended Stipulation of Settled Issues. In this stipulation, petitioners concede that they are liable for the addition to tax under section 6659 for 1981. Petitioners also concede that section 6501 does not bar the assessments for 1978 and 1979. At trial, petitioners also conceded that their only challenge to the additions to tax for negligence under section 6653 is their present argument that they were denied equal treatment.

Consents To Extend Period of Limitations

On their 1981 Federal income tax return, petitioners listed their address as "C/O Stuart Becker & Co. 665 Fifth Ave., New

York, New York 10022" (the Becker address). Stuart Becker & Co. was also listed as the preparer of petitioners' 1981 Federal income tax return. Between early 1985 and the middle of 1987, respondent mailed to petitioners a series of Forms 872, Consent to Extend the Time to Assess Tax, requesting that petitioners extend the period of limitations for 1981. The Forms 872 were mailed by respondent to the Becker address. On March 12, 1985, May 8, 1986, and May 14, 1987, petitioner signed the Forms 872 and returned them to respondent. At trial, petitioner initially testified that he did not remember whether he signed any Forms 872 or whether Becker represented him when the Forms 872 were sent to him. During cross-examination, respondent introduced copies of the signed Forms 872. In response, petitioner stated: "My memory may be faulty as to what these things meant or whether and when I got them * * *, [but] my signature is my signature, I did what I did."

## Piggyback Agreements

On December 19, 1991, respondent sent to petitioners a proposed Stipulation of Settlement (piggyback agreement) that would have enabled petitioners to have their case bound to the results reached in Provizer v. Commissioner, T.C. Memo. 1992-177. Petitioners did not agree to the piggyback agreement at this time. On March 25, 1992, this Court issued an opinion in the Provizer case. Respondent again offered the piggyback agreement

to petitioners on June 1, 1992. Petitioners again declined or at least failed to sign the piggyback agreement.

At trial, petitioner testified that he could not recall whether he had received piggyback agreements and that he would have responded to a piggyback offer if he had received one. In his posttrial brief, petitioner conceded that he had received respondent's June 1, 1992, letter. However, there is no evidence in the record that indicates that petitioners responded to the piggyback offers.

Discussion

Rule 41(a) provides: "A party may amend a pleading once as a matter of course at any time before a responsive pleading is served. * * * Otherwise a party may amend a pleading only by leave of Court or by written consent of the adverse party." Rule 41(a) further provides that leave to amend "shall be given freely when justice so requires." This Court has looked to cases decided under rule 15(a) of the Federal Rules of Civil Procedure for guidance on the interpretation of Rule 41(a). See Kramer v. Commissioner, 89 T.C. 1081, 1084-1085 (1987). Rule 15(a) of the Federal Rules of Civil Procedure, like Rule 41(a), mandates that leave to amend "shall be freely given when justice so requires."

Petitioners' motion for leave was not filed before the responsive pleading, and respondent has not consented to the motion. Accordingly, the Court must use its discretion in

deciding whether to grant or deny petitioners' motion for leave to amend. See Kramer v. Commissioner, supra at 1085. In exercising our discretion, we consider various factors, including the timeliness of the motion, the reasons for the delay, and whether granting the motion would result in issues being submitted in a seriatim fashion. See Daves v. Payless Cashways, Inc., 661 F.2d 1022, 1024 (5th Cir. 1981). Leave to amend may be inappropriate when there is undue delay, bad faith, prejudice resulting from the amendment, or a dilatory motive of the movant. See Foman v. Davis, 371 U.S. 178, 182 (1962); Russo v. Commissioner, 98 T.C. 28, 31 (1992). Moreover, we deny a taxpayer's motion to amend a petition when the argument raised is futile. See Russo v. Commissioner, supra.

In their present motion for leave to amend their petition, petitioners argue that they should be relieved of the negligence addition to tax because respondent has a duty to afford substantially equal treatment to similarly situated taxpayers. In their last-minute new argument, they suggest that respondent and this Court lack discretion to reach different results as to them, as contrasted with other taxpayers who accepted a standard settlement offer made 11 years ago, before trial of the test case.

Absent proof that a taxpayer has been singled out for disparate treatment based on impermissible considerations such as

race or religion, or absent a contractual agreement to the contrary, the Commissioner is not required to offer the same settlement terms to similarly situated taxpayers. See Estate of Campion v. Commissioner, 110 T.C. 165 (1998), affd. without published opinion sub nom. Drake Oil Tech. Partners v. Commissioner, 211 F.3d 1277 (10th Cir. 2000), affd. without published opinion sub nom. Tucek v. Commissioner, 198 F.3d 259 (10th Cir. 1999); Vulcan Oil Tech. Partners v. Commissioner, 110 T.C. 153 (1998), affd. without published opinion sub nom. Drake Oil Tech. Partners v. Commissioner, 211 F.3d 1277 (10th Cir. 2000), affd. without published opinion sub nom. Tucek v. Commissioner, 198 F.3d 259 (10th Cir. 1999); Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 58-59, supplemented by 104 T.C. 417 (1995), affd. 140 F.3d 240 (4th Cir. 1998).

In the present case, petitioners have not asserted, nor do we find, that respondent singled them out for disparate treatment based on impermissible considerations. Petitioners have also not asserted that respondent had a duty to offer them the standard settlement offer due to a contractual obligation.

Petitioners have failed to convince us that the standard settlement offer was not made available to them. At trial, petitioner testified that he personally never was offered the opportunity to have his case piggybacked to Provizer v. Commissioner, T.C. Memo. 1992-177. However, his testimony was

contradicted by letters dated December 19, 1991, and June 1, 1992. These letters indicate that petitioners were given the opportunity to enter into a piggyback arrangement. Moreover, petitioner also testified that he did not remember signing the Forms 872. Again, petitioner's testimony was contradicted. At trial, respondent introduced signed copies of the Forms 872. These instances reveal that with regard to events surrounding this case petitioner's memory is failing and unreliable. Apart from petitioner's own testimony, petitioners have failed to present any evidence that demonstrates that they were not offered the standard settlement offer. Under these circumstances, we are unconvinced by petitioner's self-serving and failing memory. There is in this record no credible evidence that respondent failed to send the standard settlement offer to petitioners although the offer was sent to all other investors in the plastics recycling project. On the other hand, respondent has presented no affirmative evidence of mailing the standard offer to petitioners. Respondent urges, quite reasonably, that it is unfair to expect him to produce evidence concerning newly alleged circumstances years after the events in question. Moreover, petitioners have failed to convince us that they were inclined to accept the standard settlement offer. Petitioner is an experienced attorney who is aware that cases can be resolved through settlement. We also note that petitioners have been

represented in this case by counsel who for many years have been or should have been aware of the settlement positions that were made available by respondent.[2]  Additionally, on December 19, 1991, and June 1, 1992, respondent offered piggyback agreements to petitioners.  On both occasions, petitioners failed to accept respondent's offer and did not submit any counter offer.  These circumstances support the conclusion that petitioners never had any intention of settling this case.

Petitioners' motion for leave to amend their petition again is also untimely.  Presently, they are seeking to amend their petition for a second time, more than 11 years after they filed their original petition.  Moreover, petitioners' counsel for many years have been or should have been aware of the settlement agreements that were made available to participants in Plastics Recycling cases.  Accordingly, petitioners had ample time to raise this argument.  This Court has consistently refused to reward such dilatory behavior.  See Russo v. Commissioner, 98

---

[2]    Petitioner represented himself and his wife until Jan. 26, 1994.  On that date, Hugh Janow (Janow) entered his appearance in the case.  On Aug. 8, 1994, Janow withdrew from the case and petitioners' current counsel, Stuart Smith (Smith), entered his appearance.  Smith has tried numerous Plastics Recycling cases. See, e.g., Sann v. Commissioner, T.C. Memo. 1997-259, affd. sub nom. Addington v. Commissioner, 205 F.3d 54 (2d Cir. 2000); Jaroff v. Commissioner, T.C. Memo. 1996-527; Gollin v. Commissioner, T.C. Memo. 1996-454.  In Jaroff and Gollin, Smith specifically referred to the standard settlement offer.  See Jaroff v. Commissioner, supra n.17; Gollin v. Commissioner, supra n.21.

T.C. 28 (1992); <u>Bernard v. Commissioner</u>, T.C. Memo. 1995-332 (taxpayer waited until she lost the substantive issues before she filed a subsequent motion to raise a new issue.); <u>Estate of Allinson v. Commissioner</u>, T.C. Memo. 1994-304 (Court denied motion filed 7 years after stipulation of settlement executed).

Lastly, granting petitioners' motion would result in undue prejudice to respondent. As we have noted, petitioners are now attempting to raise a new argument 12 years after the standard settlement offer was made available, 11 years after they filed their original petition and 6 years after this case was partially tried. Petitioners seek relief from the penalty under section 6653(a) without regard to whether the penalty is appropriate under the facts of this case. They seek relief from the penalty by raising the equality of treatment argument many years after the pleadings and partial trial and without convincing evidence that they have been treated unfairly.

Petitioner has delayed trial and even been absent from a partial trial. He has consistently refused to settle the case but has waited until the issues have been tried many times by others under closely analogous facts and circumstances. Now after many years of avoiding, delaying, or refusing settlement or trial, petitioner seeks to obtain for himself the benefit of a settlement offer made many years ago before the issues in this case had been tried. The prejudice to respondent is obvious; the

motion for leave to amend the petition is contrary to the interests of justice and impermissible.

For all the foregoing reasons, petitioners' motion for leave to amend petition shall be denied.

To reflect the foregoing,

<u>An order will be issued denying petitioners' motion for leave to amend petition, and decision will be entered under Rule 155</u>.