T.C. Memo. 2001-215

UNITED STATES TAX COURT

JEFFREY H. WEITZMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 467-00.                          Filed August 13, 2001.

Jeffrey H. Weitzman, pro se.

Christine Colley, for respondent.

MEMORANDUM OPINION

DEAN, Special Trial Judge:  In a so-called affected items

notice of deficiency, respondent determined petitioner is liable

for additions to tax of $1,080 under section 6653(a)(1), 50

percent of the interest due on $21,604 under section 6653(a)(2),

and $5,001 under section 6659 for the 1982 taxable year.[1]

_____

    [1]  Unless otherwise indicated, section references are to the
                                                (continued...)

Petitioner concedes that he is liable for an addition to tax of $5,001 pursuant to section 6659 for an underpayment of tax attributable to valuation overstatement. The remaining issue for decision is whether petitioner is liable for additions to tax pursuant to section 6653(a)(1) and (2) for negligence or intentional disregard of rules or regulations.

## Background

The stipulation of facts and the accompanying exhibits are incorporated herein by reference. Petitioner resided in New York, New York, at the time his petition was filed with the Court.

This case is part of the Plastics Recycling group of cases. The additions to tax arise from the disallowance of losses, investment credits, and energy credits claimed by petitioner with respect to a partnership known as Foam Recycling Associates (Foam or the partnership).

For a detailed discussion of the transactions involved in the Plastics Recycling group of cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. per curiam without published opinion 996 F.2d 1216 (6th Cir. 1993). The parties have stipulated that the underlying transactions in petitioner's

---

[1](...continued)
Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

case are substantially identical to the transactions in <u>Provizer</u> <u>v. Commissioner</u>, <u>supra</u>. In <u>Provizer</u>, the Court held that the transactions involving Sentinel EPE[2] recyclers (recyclers) were so lacking in economic substance that they were to be disregarded for Federal income tax purposes.

In a series of simultaneous transactions closely resembling those in <u>Provizer</u>, Packaging Industries Group, Inc. (PI), manufactured and sold[3] four recyclers to Ethynol Cogeneration, Inc. (ECI), for $3,924,000. ECI agreed to pay PI $327,000 for the recyclers at closing, with the balance of $3,597,000 financed through a 12-year nonrecourse promissory note (ECI note). ECI resold the recyclers to F&G Equipment Corp. (F&G) for $4,650,668. F&G agreed to pay $377,000 in cash, with the balance of $4,273,668 financed through a 12-year partial recourse promissory note (F&G note). The F&G note was purportedly recourse to the extent of 20 percent of its face value; however, the recourse portion was payable only after the nonrecourse portion was satisfied.

---

[2] EPE stands for expanded polyethylene.

[3] Terms such as "sale" and "lease", as well as their derivatives, are used for convenience only and do not imply that the particular transaction was a sale or lease for Federal tax purposes. Similarly, terms such as "joint venture" and "agreement" are also used for convenience only and do not imply that the particular arrangement was a joint venture or an agreement for Federal tax purposes.

F&G leased the recyclers to Foam under a lease term of 9-1/2 years, and the partnership entered into a joint venture with PI to "exploit" the recyclers and place them with end-users.  The partnership also agreed to pay a $50,000 consulting fee to John Bambara, president and controlling shareholder of PI.

In connection with these transactions, PI was required to pay a monthly joint venture fee to Foam, in the same amount as Foam's monthly base rent to F&G, in the same amount as F&G's monthly payment to ECI on the F&G note, in the same amount as ECI's monthly payment to PI on the ECI note.  All of these entities, however, entered into offset agreements making the foregoing payments nothing more than bookkeeping entries.

By a private placement offering memorandum (offering memorandum) prepared by the law firm of Windels, Marx, Davies & Ives dated August 30, 1982, 12 limited partnership units in Foam were offered to potential investors at $50,000 per partnership unit.  Pursuant to the offering memorandum, the limited partners would own 99 percent of Foam, and the general partner, Richard Roberts, would own the remaining 1 percent.  As provided by the offering memorandum, each limited partner was required to have a net worth (including residence and personal property) of more than $1 million or have income in excess of $200,000, for each investment unit.

The offering memorandum informed investors that Foam's business would be conducted in accordance with the transactions described above. The offering memorandum was replete with warnings. The front page of the memorandum cautioned in bold capital letters that "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK". Significant business and tax risks associated with an investment in the partnership were specifically enumerated in the offering memorandum. Those risks included the following: (1) There was a substantial likelihood of audit by the Internal Revenue Service (IRS), and the IRS might challenge the fair market value of the recyclers, recharacterize F&G's lease to the partnership as other than a bona fide lease, and assert that the partnership transactions were not conducted with the objective of making an economic profit exclusive of tax benefits; (2) the partnership had no prior operating history; (3) the management of the partnership's business would be dependent on the services of the general partner, who had limited experience in marketing recycling or similar equipment and who was only required to devote such time to the affairs of the partnership as he deemed necessary; (4) the limited partners would have no control over the conduct of the partnership's business; (5) there were no assurances that market prices for new resin pellets would remain at the current cost per pound or that the recycled pellets would

be as marketable as virgin pellets; and (6) certain potential conflicts of interest existed.

The disclosure of potential conflicts of interest in the offering memorandum made clear that the parties involved in the partnership transactions had ongoing business relationships and that many of the individuals involved had interests in more than one entity involved in the transactions. The memorandum revealed that: (1) Richard Roberts (Roberts), the general partner of Foam was a 9-percent shareholder of F&G; (2) the executive vice president of PI was a 9.1-percent shareholder of F&G; (3) Elliot Miller (Miller), general counsel for PI, was a 9.1-percent shareholder of F&G; and (4) Miller was the attorney for Samuel Burstein, one of the F&G evaluators, and Miller also represented Roberts in connection with certain tax and other matters, F&G in corporate matters, and other individuals involved in the transactions in a variety of matters.

The absence of independent representation was also stressed in the offering memorandum:

> Prospective purchasers have not been independently represented in connection with the structuring or conduct of the Offering. Each prospective purchaser is urged to seek independent advice and counsel before making an investment in the Partnership.

The offering memorandum prominently touted the anticipated tax benefits for a limited partner in the initial year of investment:

The principal tax benefits expected from an investment in the Partnership are to be derived from the Limited Partner's share of investment and energy tax credits and tax deductions expected to be generated by the Partnership in 1982.  The tax benefits on a per Unit basis are as follows:

|  | Payment | Projected Regular Investment and Energy Tax Credits | Projected Tax Deductions |
|------|---------|----------------------------------------------------|--------------------------|
| 1982 | $50,000 | $76,736 | $39,878 |

The Limited partners are not liable for any additional payment beyond their cash investment for their Units, nor are they subject to any further assessment.

The offering memorandum also included a tax opinion prepared by the law firm of Boylan & Evans concerning the tax issues involved in the Plastics Recycling program.  William A. Boylan and John D. Evans were formerly partners at Windels, Marx, Davies & Ives before leaving in 1982 and forming their own law firm. The opinion letter was addressed to Foam's general partner and stated that "this letter is intended for your own individual guidance and for the purpose of assisting prospective purchasers and their tax advisors in making their own analysis, and no prospective purchaser is entitled to rely upon this letter."  The offering memorandum also emphasized that the opinion provided by Boylan & Evans was for the general partner's individual guidance and that prospective purchasers were not permitted to rely upon the advice in the opinion.

The opinion expressly warned that the investment and energy tax credits available to limited partners would be reduced or

eliminated if the partnership could not demonstrate that the price paid for the recyclers approximated their fair market value. The opinion did not purport to rely on any independent confirmation of the fair market value of the recyclers. Rather, the opinion clearly relied on Stanley Ulanoff's (Ulanoff) conclusion that the purchase price to be paid by F&G was fair and reasonable. The opinion also relied on the representations of PI and other entities involved in the transactions that "the prices paid by ECI and by F&G and the terms of the Lease were negotiated at arm's length" to reach the conclusion that "the basis to the Partnership upon which the aggregate investment and energy tax credits are to be computed is the price paid by F&G for the Sentinel Recyclers".

Also included in the offering memorandum were the reports of two "F&G Evaluators", Samuel Z. Burstein (Burstein) and Ulanoff. Burstein was a professor of mathematics at New York University. Burstein's report concluded that the recyclers were capable of continuous recycling. The report also concluded that the recycling system would yield a material having commercial value.

At the time Ulanoff prepared his report, he was a professor of marketing at Baruch College and also the author of numerous books on technical and marketing subjects. Ulanoff's report concluded that the price paid by F&G for the recyclers, the rent paid by Foam, and the joint venture profits were all fair and

reasonable.  Both Burstein and Ulanoff held investments in plastics recycling transactions.  The offering memorandum disclosed that Burstein was a client and business associate of PI's corporate counsel.

Petitioner is an attorney who practiced real estate law in a New York firm during the year in issue.  During the course of a real estate transaction in 1979, petitioner was impressed with his client's financial adviser, Harris W. Freedman (Freedman).  After the real estate transaction was completed, petitioner retained Freedman's accounting firm, H.W. Freedman & Co., to prepare his annual tax returns.

In addition to being the named partner in an accounting firm, Freedman was the president of F&G.  In 1982, Freedman sent petitioner a private placement memorandum for Foam.  Petitioner has no education or work experience in plastics recycling or plastics materials.  Petitioner discussed the investment with Freedman.  He read the offering memorandum and reviewed it with Jake Jacobson (Jacobson), his tax return preparer from H.W. Freedman & Co.  He also discussed the transaction with one of the associates in the tax department of petitioner's law firm.  The associate told petitioner that he "might have a supportable tax position".

After reviewing the offering memorandum with petitioner, Jacobson came to petitioner's office and told him that he had

personally visited the Sentinel facility and had spoken with the president of PI. Jacobson told petitioner that it was a viable investment. Petitioner then purchased a $12,500 partnership interest in Foam.

On his 1982 Federal income tax return, petitioner claimed a loss of $10,101 as his distributive share of the partnership's reported loss for 1982. He also claimed a regular investment credit and an energy investment credit in the aggregate amount of $16,669. Thus, the tax benefits petitioner claimed for his initial year of investment in the Partnership exceeded his $12,500 investment. In 1986 petitioner filed an amended Federal income tax return for 1982. On the amended return petitioner deducted his $12,500 investment in Foam and reversed the credits and net loss from the Partnership he claimed on his original 1982 return.

Foam was a so-called TEFRA partnership subject to the unified partnership audit and litigation procedures set forth in sections 6221 through 6233. See Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648. On December 21, 1989, a notice of final partnership administrative adjustment (FPAA) with respect to Foam's 1982 tax year was issued to petitioner and to Richard Roberts, Foam's general partner and tax matters partner. The FPAA advised petitioner of adjustments to the 1982 Form 1065,

Partnership Return of Income, filed by Foam.  The FPAA disallowed all deductions and credits claimed by Foam in connection with its plastics recycling activity.

On October 25, 1999, respondent issued a notice of deficiency to petitioner for additions to tax for his 1982 taxable year.  The additions relate to the deductions and credits petitioner claimed on his original 1982 return with respect to his investment in Foam.

## Discussion

We have decided many Plastics Recycling cases.  Most of those cases, like the present case, have presented issues regarding additions to tax for negligence.  See, e.g., West v. Commissioner, T.C. Memo. 2000-389; Barber v. Commissioner, T.C. Memo. 2000-372; Barlow v. Commissioner, T.C. Memo. 2000-339; Carroll v. Commissioner, T.C. Memo. 2000-184; Ulanoff v. Commissioner, T.C. Memo. 1999-170; Greene v. Commissioner, T.C. Memo. 1997-296; Kaliban v. Commissioner, T.C. Memo. 1997-271; Sann v. Commissioner, T.C. Memo. 1997-259 n.13 (and cases cited therein), affd. sub nom. Addington v. Commissioner, 205 F.3d 54 (2d Cir. 2000).  In all but a few of those cases, we found the taxpayers liable for the additions to tax for negligence.

In Provizer v. Commissioner, T.C. Memo. 1992-177, the test case for the Plastics Recycling group of cases, this Court:  (1) Found that each recycler had a fair market value of not more than

$50,000; (2) held that the transaction, which was virtually identical to the transaction in the present case, was a sham because it lacked economic substance and a business purpose; (3) sustained the additions to tax for negligence under section 6653(a)(1) and (2); (4) sustained the addition to tax for valuation overstatement under section 6659 because the underpayment of taxes was directly related to the overvaluation of the recyclers; and (5) held that the partnership losses and tax credits claimed with respect to the plastics recycling partnership at issue were attributable to tax-motivated transactions within the meaning of section 6621(c).  We also found that other recyclers were commercially available during the years in issue.  Id.

In this case, respondent determined that petitioner is liable for additions to tax for negligence under section 6653(a)(1) and (2) with respect to underpayments of tax attributable to petitioner's investment in Foam.  Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations.  An additional amount is added to the tax under section 6653(a)(2) in an amount equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.

Petitioner has the burden of proving that he is not liable for the addition to tax.  Addington v. Commissioner, supra at 58; Goldman v. Commissioner, 39 F.3d 402, 407 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).  See generally Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[4]

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The pertinent question is whether a particular taxpayer's actions are reasonable in light of the taxpayer's experience, the nature of the investment, and the taxpayer's actions in connection with the transaction.  Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).  The determination of negligence is highly factual.  "When considering the negligence addition, we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers as well as the manner in which the taxpayers approached their investment."  Turner v. Commissioner, T.C. Memo. 1995-363.

Petitioner accepts the finding of the Court in Provizer v. Commissioner, supra, that the Sentinel EPE Recyclers had a

---

[4]  Cf. sec. 7491(c), effective for court proceedings arising in connection with examinations commencing after July 22, 1998. Petitioner does not contend that his examination commenced after July 22, 1998, or that sec. 7491 is applicable to his case.

maximum value of $50,000 each. Petitioner, nevertheless, contends that he was reasonable in claiming deductions and credits with respect to the partnership on his 1982 Federal income tax return based upon each recycler's having a value of $1,162,667. To support this contention petitioner argues that he discussed the investment with his advisers and reviewed the offering memorandum. He alleges that his investigatory actions were commensurate with the size of his investment.

Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Freytag v. Commissioner, supra. In order for reliance on professional advice to excuse a taxpayer from negligence, the taxpayer must show that the professional had the requisite expertise, as well as knowledge of the pertinent facts, to provide informed advice on the subject matter. David v. Commissioner, 43 F.3d 788, 789-790 (2d Cir. 1995), affg. T.C. Memo. 1993-621; Goldman v. Commissioner, supra; Freytag v. Commissioner, supra.

Reliance on representations by insiders or promoters, or on offering materials has been held an inadequate defense to negligence. Goldman v. Commissioner, supra; LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991). Advice from such individuals "is better classified as sales promotion." Vojticek v. Commissioner, T.C. Memo. 1995-444. Pleas of reliance also have been rejected when neither the taxpayer nor the advisers purportedly relied on by the taxpayer knew anything about the nontax business aspects of the contemplated venture. David v. Commissioner, supra; Freytag v. Commissioner, supra.

Petitioner claims that he reviewed the offering memorandum and its accompanying materials and discussed the partnership investment with Freedman, Jacobson, and an associate in his law firm. Petitioner's purported reliance on these individuals and on the materials in the offering memorandum, however, does not relieve him of liability for the additions to tax for negligence.

The offering memorandum itself, especially the numerous warnings and discussions of tax benefits and risk of audit, should have alerted a prudent and reasonable investor to the questionable nature of the promised deductions and credits. See Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988),

affg. Dister v. Commissioner, T.C. Memo. 1987-217; Sacks v. Commissioner, T.C. Memo. 1994-217, affd. 82 F.3d 918 (9th Cir. 1996). The total of investment and energy tax credits ostensibly generated by the partnership and claimed by petitioner was almost 1-1/2 times his cash investment. In addition, petitioner claimed over $10,000 as a partnership loss. Consequently, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, [petitioner] never had any money in the * * * [partnership]." The disproportionately large tax benefits claimed on petitioner's Federal income tax return, relative to the dollar amount invested, should have alerted petitioner to the need for further investigation of the partnership transactions.

Any reliance petitioner may have placed on the materials in the offering memorandum was unreasonable in light of the memorandum's specific warnings that potential investors should not rely on the statements or opinions contained in it and that they should seek independent advice. See Collins v. Commissioner, supra at 1386. The tax opinion letter prepared by Boylan & Evans included with the offering memorandum also expressly cautioned prospective investors such as petitioner not to rely upon the letter.

Moreover, the tax opinion made clear that no independent evaluation of the transactions involved in this case was

conducted. The opinion indicated that Boylan & Evans, in expressing its opinion, relied on the statements of the general partner and "other statements of fact and opinion furnished to us by persons familiar with the transactions described in the Memorandum." Boylan & Evans's conclusion about the fair market value of the recyclers clearly was based on the assumption that the parties to the transactions had negotiated prices at arm's length. In light of the close relationships existing among the parties to the transactions and the enormous price paid for the recyclers, petitioner should have questioned whether the prices were in fact negotiated at arm's length. Under these circumstances, petitioner may not claim that he reasonably and in good faith relied on Boylan & Evans's tax opinion.

Petitioner's contention that he reasonably relied on the expert opinions of Ulanoff and Burstein included with the offering memorandum also is unjustified. Both Ulanoff and Burstein owned an interest in more than one partnership which owned Sentinel Recyclers as part of the plastics recycling program; thus their conclusions were unreliable. See Provizer v. Commissioner, supra. Moreover, Ulanoff's report contained no elaboration about his basis for concluding that the price to be paid for the recyclers by F&G and the rent to be paid by the partnership were fair and reasonable. Given the well-disclosed fact that the investment and energy tax credits generated by the

partnership were dependent on the fair market value of the recyclers, petitioner should have made inquiries into the value of the recyclers rather than merely relying on unsubstantiated conclusions.

Petitioner does not suggest that any of the individuals with whom he discussed the partnership had any expertise in plastics or the plastics recycling industry. The expertise of both Jacobson and petitioner's law firm associate is in taxation. Nothing in the record suggests petitioner's law firm associate consulted with anyone who had any expertise in plastics or investigated the partnership beyond looking at materials in the offering memorandum. The associate's advice did not go any further than indicating that the partnership "might have a supportable tax position" if the facts and circumstances proved to be as represented in the offering memorandum. Although Jacobson supposedly visited the Sentinel facility and concluded that Foam was a viable investment, petitioner has presented no evidence that Jacobson had any basis from which to draw such a conclusion.

Freedman's experience with leveraged leasing does not make him an expert on plastics. Further, Freedman's position as an investor in plastics recycling transactions and as a shareholder and president of F&G made him an interested party in the investment at issue. The fact that Freedman introduced the

partnership investment to petitioner should have put petitioner on guard that Freedman was engaged in selling rather than acting as an independent adviser. "It is unreasonable for taxpayers to rely on the advice of someone who they know has a conflict of interest." Addington v. Commissioner, 205 F.3d at 59; see also Goldman v. Commissioner, 39 F.3d at 408; LaVerne v. Commissioner, 94 T.C. at 652.

Likewise, Jacobson's affiliation with Freedman should have made petitioner wary of his recommendation. Jacobson was employed by Freedman's accounting firm, H.W. Freedman & Co. H.W. Freedman & Co. prepared the tax returns for ECI, F&G, and partnerships engaged in plastics recycling transactions. See Provizer v. Commissioner, supra. Freedman was also named in the offering memorandum as president of F&G, lessors of the recyclers. Petitioner acknowledged at trial that Jacobson "was more heavily involved in the investment than [petitioner] realized". Petitioner should have examined Jacobson's motives for recommending the investment. As a real estate attorney, petitioner should have known to exercise caution in relying upon his advice.

Petitioner's testimony suggests that in investing in the partnership he never had a profit motive beyond anticipated tax savings. When asked at trial whether he expected that he would receive a positive cashflow from his investment in the

partnership, petitioner responded: "Well, I thought there might be a residual value, but obviously the tax credits were the main feature". He explained that the residual value he referred to was the remaining value of the recyclers at the end of the partnership's lease. Yet the tax opinion letter stated that "the Partnership does not have an option to purchase the Sentinel Recyclers even at fair market value, and any residual value of the Sentinel Recyclers will inure solely to the benefit of F&G." Thus, the partnership had nothing to gain from the residual value of the recyclers at the end of its lease.

Upon consideration of the entire record, we hold that petitioner did not exercise due care in claiming substantial tax credits and partnership losses. It was not reasonable for petitioner to rely on the offering memorandum, the expert opinions contained therein, promoters, insiders to the transaction, or his law firm associate. Accordingly, petitioner is liable for the negligence additions to tax under section 6653(a)(1) and (2).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.