Josephine CHIMBLO, Estate of Anthony J. Chimblo, Deceased, Rosalie Monahan, Executrix, and Catherine Chimblo, Estate of Gus Chimblo, Deceased, Catherine Chimblo, Executrix, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Docket Nos. 98–4306, 98–4307.

United States Court of Appeals, Second Circuit.

Argued March 15, 1999.

Decided May 17, 1999.

**120**

Tobias Weiss, Stamford, CT, for Petitioners–Appellants.

John A. Nolet, Tax Division, Department of Justice, Washington, DC (Loretta C. Argrett, Assistant Attorney General, William S. Estabrook, Attorney, Tax Division, Charles S. Casazza, Appellate Deputy, United States Tax Court, Stuart L. Brown, Office of Chief Counsel, Internal Revenue Service, of counsel), for Respondent–Appellee.

Before: WALKER and CABRANES, Circuit Judges, and TSOUCALAS, Judge.*

JOHN M. WALKER, Jr., Circuit Judge:

Petitioners appeal from the decisions of the United States Tax Court (Dinan, *J.*), rejecting their contention that they were not properly notified of earlier partnership proceedings which led to the determination of petitioners' tax deficiencies, and finding petitioners liable for additions to tax stemming from petitioners' negligence in substantially underpaying their taxes. We affirm.

## I. BACKGROUND

### A. Statutory Framework

Before reciting the facts relevant to this dispute, it is useful to outline briefly the statutory context in which the case arises. In 1982, as part of the Tax Equity and

* The Honorable Nicholas Tsoucalas of the United States Court of International Trade, sitting by designation.

Fiscal Responsibility Act ("TEFRA"), *see* Pub.L. No. 97–248, § 402(a), 96 Stat. 324, Congress enacted the unified partnership audit examination and litigation provisions of the Internal Revenue Code ("IRC"), now found, as amended, at 26 U.S.C. §§ 6221–6234. These provisions centralized the treatment of partnership taxation issues, and "ensure[d] equal treatment of partners by uniformly adjusting partners' tax liabilities." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir.1998) (citing Staff of the Joint Committee on Taxation, 97th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Responsibility Act of 1982, at 268); *see also Transpac Drilling Venture 1982–12 v. Commissioner*, 147 F.3d 221, 223 (2d Cir.1998); *Randell v. United States*, 64 F.3d 101, 103–04 (2d Cir.1995). Prior to TEFRA's enactment, multiple proceedings were required to address the tax treatment of partnership issues, because partnerships are not separately taxable entities and partnership income and expenses "pass through" to the individual partners. *See* IRC §§ 701, 6031.

Under TEFRA, the Commissioner must notify partners of the beginning and end of partnership-level administrative proceedings. *See* IRC § 6223. Upon issuance of a notice of final partnership administrative adjustment ("FPAA"), the "tax matters" partner—a person or entity designated as such by the partnership under applicable regulations or, most commonly, the general partner with the largest profit stake in the partnership, *see* IRC § 6231(a)(7)—may, within 90 days, contest the FPAA by filing a petition for readjustment of "partnership items" in Tax Court, the Court of Federal Claims, or the appropriate federal district court. IRC § 6226(a). A "partnership item" is "any item required to be taken into account for the partnership's taxable year ... [that] is more appropriately determined at the partnership level than at the partner level." IRC § 6231(a)(3). If no such petition is filed by the tax matters partner within the 90–day period, any notice partner or five-percent group may file a petition within the next 60 days. *See* IRC § 6226(b)(1). Any partner "with an interest in the outcome of the proceeding [is] entitled to participate in an action brought by the tax matters partner or a notice partner, [IRC] §§ 6226(c), 6226(d), thereby meeting TEFRA's objective of ensuring that all partners may ... litigate a dispute with the IRS in a single proceeding." *Randell,* 64 F.3d at 104.

Changes in the tax liabilities of individual partners which result from the correct treatment of partnership items determined at the partnership level proceeding are defined under TEFRA as "computational adjustments." IRC § 6231(a)(6). If no petition for readjustment is filed within 150 days after the mailing of the FPAAs by the Commissioner, tax deficiencies attributable to partnership items, as determined in the FPAAs, may be assessed as computational adjustments against the individual partners without further delay. If, however, a readjustment proceeding is commenced, the assessment of any tax deficiencies as computational adjustments must wait until the decisions of the court are final. *See* IRC § 6225.

TEFRA contemplates the Commissioner's determination at the individual partner level of "affected items," which are defined as "any item to the extent such item is affected by a partnership item." IRC § 6231(a)(5). Penalties assessed against a partner based on the partner's tax treatment of partnership items on his individual return are examples of affected items. *See Olson v. United States,* 172 F.3d 1311, at 1316 (Fed.Cir.1999); *N.C.F. Energy Partners v. Commissioner,* 89 T.C. 741, 744–46, 1987 WL 45298 (1987). A partner must be afforded notice of any tax deficiency pursuant to IRC § 6212, and he or she can contest the determination of affected items pursuant to IRC § 6213.

### B. The Barrister Partnership Investment

In late 1983 and early 1984, Gus Chimblo and his wife Catherine invested $25,000

in a partnership known as the Barrister Equipment Associates Series 151 ("Barrister" or "Barrister Partnership"). Gus's brother Anthony J. Chimblo and his wife Josephine also invested $25,000, although Josephine handled the transaction alone because of Anthony's failing health. The investments were made on the advice of John Santella, the Chimblos' family accountant and a financial advisor to the Chimblo brothers' construction business. Santella also prepared the Chimblos' individual federal income tax returns. Prior to meeting with Santella about the proposed investment, neither Josephine nor Catherine had heard of Barrister, and neither could recall reviewing any documentation describing the Barrister investment either before or after investing.[1]

According to disclosure statements attached to its 1983 and 1984 tax returns, the Barrister Partnership's sole business was printing and selling "49 different literary works and microcomputer disks aimed at a general public market, using leased films, plates and disks to produce said products." On its 1983 and 1984 returns, the Barrister Partnership claimed ordinary losses in the amounts of $848,599 and $1,059,623, respectively, and qualified investment tax credit property in the amounts of $18,809,500 and $6,110,000, respectively.

The two Chimblo couples claimed their distributive shares of the pass-through losses and investment tax credits reported by the Barrister Partnership on their 1983 and 1984 income tax returns. Thus, both couples claimed ordinary loss deductions of $10,477 in 1983 and $13,083 in 1984, and investment tax credits of $18,578 in 1983 and $6,035 in 1984. More precisely, Gus and Catherine used only $7,817 of their 1983 investment tax credit on their tax return for 1983, but they filed amended tax returns for 1980 and 1982, carrying back the unused portions of the 1983 investment

tax credit to offset their previously reported tax liability by $9,571 for 1980 and by $1,190 for 1982. Anthony and Josephine used none of their investment tax credit in 1983, but they filed amended returns for 1980 and 1981, carrying back their unused 1983 credit to offset tax liabilities previously reported for 1980 and 1981 in the respective amounts of $11,893 and $6,685.

### C. Assessment of Tax Deficiencies

On September 5, 1989, the Commissioner mailed to the Barrister partners, including taxpayers, notices of FPAAs determining adjustments to Barrister's 1983 and 1984 partnership returns. After Barrister's tax matters partner instituted proceedings in the Tax Court on behalf of the partnership, the Tax Court entered a stipulated decision on February 17, 1995, determining that none of the losses claimed by Barrister for 1983 and 1984 was allowed and that the qualified investment tax credit property for those years was zero.

As a consequence of that decision, the Commissioner assessed against petitioners, as computational adjustments, the tax deficiencies attributable to the losses and investment tax credits claimed by petitioners as related to the Barrister Partnership. *See* IRC §§ 6225, 6230(a)(1), & 6231(a)(6). Because Catherine and Gus Chimblo had carried back portions of the tax credit claimed for 1983, tax deficiencies were assessed for 1980 and 1982, as well as for 1983 and 1984. The deficiencies assessed in these years were for $9,571 in 1980, $1,190 in 1981, $12,387 in 1983, and $12,577 in 1984. Because of carry-backs claimed by Josephine and Anthony Chimblo, tax deficiencies were assessed against them for 1980 and 1981 in the respective amounts of $11,893 and $6,685. The Commissioner also assessed statutory interest due on the underpayments of tax. The interest amounts were computed under

---

1. Anthony and Gus Chimblo died in 1984 and 1988, respectively. John Santella died in 1996, before the trial in the tax court. Thus,

at trial, Catherine and Josephine were the only people able to offer testimony regarding their Barrister investments.

IRC § 6621(c) (1986), which provided for an increased rate of interest (120% of the normal rate) to be applied on substantial underpayments of tax that result from tax-motivated transactions.

On April 29, 1996, the Commissioner, pursuant to IRC § 6212, mailed separate notices of deficiency for taxable years 1980, 1982, 1983 and 1984 to taxpayers Gus Chimblo (deceased) and Catherine Chimblo. On May 3, 1996, the Commissioner also mailed separate notices of deficiency for taxable years 1980 and 1981 to Anthony J. Chimblo (deceased) and Josephine Chimblo. By the notices, which form the basis for the instant case, the Commissioner determined, with respect to the tax deficiencies arising out of the Barrister partnership-level proceedings, that taxpayers were liable for affected items, *see* IRC §§ 6230(a)(2)(A)(i), 6231(a)(5), required to be determined at the partner level. Specifically, the Commissioner asserted that petitioners were liable for additions to tax for negligence under then-existing IRC § 6653(a), and additions to tax for substantial underpayment of taxes under then-existing IRC § 6661.

### D. The Tax Court Proceedings

On July 26, 1996, Gus (by Catherine, as executrix of his estate) and Catherine timely mailed a petition to the Tax Court in response to the notices of deficiency. On July 31, 1996, Anthony (by Rosalie Monahan, executrix of his estate) and Josephine did the same. Petitioners' cases were consolidated by the Tax Court for all purposes.

In their petitions, taxpayers claimed that they had reasonably relied on their accountant's advice in making the investment in Barrister and that therefore they should not be held liable for negligence penalties. They also sought the return of alleged overpayments of assessed interest, on the grounds that (1) they had paid the interest assessed against them on the underlying tax deficiencies, and (2) the Barrister Partnership transactions were not tax-motivated, making inapplicable the increased rate of interest under IRC § 6621(c) (1986).

The Tax Court held a trial on May 13, 1997. The Commissioner conceded that the understatements of tax assessed against petitioners as a result of the earlier partnership-level proceedings were not attributable to tax-motivated transactions, thus making inapplicable the increased rate of interest under IRC § 6621(c) (1986). Accordingly, the Commissioner advised the Tax Court and petitioners that the overpayments of interest would be abated and refunded or credited to petitioners. The parties submitted stipulations of facts in both cases, and the Tax Court then proceeded to hear testimony from Catherine and Josephine Chimblo regarding their investments in Barrister and their dealings with the IRS.

After trial, the parties submitted posttrial briefs, in which petitioners asserted, for the first time, that the statute of limitations set forth at IRC § 6229(a) expired prior to the issuance of FPAAs relating to the Barrister partnership-level proceeding and thus barred the Commissioner's assertion of penalties in their individual cases. They contended that they were not negligent with respect to their tax treatment of the Barrister investments because they reasonably relied on John Santella's advice. Petitioners also alleged, apparently for the first time, that the Commissioner abused his discretion in failing to waive the substantial understatement penalties asserted against petitioners pursuant to IRC § 6661(c). Finally, petitioners argued that they were entitled to a refund of an overpayment of interest because of the Commissioner's concession that § 6621(c)'s increased interest provision was inapplicable, and that they were entitled to a refund of tax and interest if the Tax Court agreed with their statute of limitations contention.

In a memorandum opinion dated December 3, 1997, *see Chimblo v. Commissioner*, 74 T.C.M. (CCH) 1307, 1997 WL 742509

(1997), the Tax Court found: (1) that petitioners had been sent a notice of FPAA, and thus could have appeared and represented their interests in the earlier Barrister partnership-level proceeding; (2) that petitioners' failure to raise a statute of limitations defense at the earlier partnership-level proceeding foreclosed consideration of that defense at the partner level; (3) that the Commissioner had erroneously asserted a negligence penalty for 1980 under IRC §§ 6653(a)(1) and (2)—provisions which were not in effect prior to 1981—meaning that petitioners could not be held liable for the § 6653(a)(2) additions to tax for 1980, although liability under § 6653(a) remained undisturbed; (4) that petitioners' reliance on Mr. Santella's advice with regard to the tax treatment of the Barrister investment was not reasonable under the circumstances, thus sustaining the Commissioner's finding of negligence under § 6653(a); and (5) that since there was no evidence in the record that petitioners had requested a waiver of substantial underpayment penalties imposed under § 6661, there was no basis for finding that the Commissioner abused his discretion in declining to waive them.

The Tax Court entered its decisions pursuant to Tax Court Rule 155, which establishes a procedure by which the parties determine the financial ramifications of the court's decisions. *See Estate of Shapiro v. Commissioner*, 111 F.3d 1010, 1013 n. 4 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 686, 139 L.Ed.2d 632 (1998). Under Rule 155, "[e]ach party submits its own calculations [to the court], and, if there is a discrepancy, the court resolves it." *Id.*

After the parties submitted their respective proposed computations under Rule 155, petitioners objected to the Commissioner's calculations on the ground that the interest overpayment amounts set forth by the Commissioner failed to account for interest payments petitioners made toward the assessments against them under IRC § 6621(c). The Tax Court adopted the computations submitted by the Commissioner over petitioners' objections. On June 5, 1998, the Tax Court entered decisions reflecting that petitioners are liable for the following penalties and are due interest overpayments in the following amounts:

| | § 6653(a) | § 6653(a)(1) | § 6653(a)(2) | § 6661 | Interest Overpayments |
|---|---|---|---|---|---|
| **Catherine and Gus:** | | | | | |
| 1980 | $479 | —————— | —————— | ——— | $18,326.43 |
| 1982 | —————— | $ 60 | * | ——— | $ 1,442.00 |
| 1983 | —————— | $619 | ** | $3,097 | $ 2,260.27 |
| 1984 | —————— | $629 | *** | $3,144 | —————— |
| **Josephine and Anthony:** | | | | | |
| 1980 | $595 | —————— | —————— | ——— | $27,695.05 |
| 1981 | —————— | $334 | **** | ——— | $15,567.29 |

\* 50 percent of the interest due on $1,190
\*\* 50 percent of the interest due on $12,387
\*\*\* 50 percent of the interest due on $12,577
\*\*\*\* 50 percent of the interest due on $6,685

## II.  DISCUSSION

On appeal, petitioners challenge each of the Tax Court's decisions, as well as its failure to quantify the amount of the negligence penalty imposed under IRC § 6653(a)(2). We consider each contention in turn.

A. The Statute of Limitations Defense

Petitioners claim that the Tax Court erred when it held that they had waived any statute of limitations defense by failing to raise it in the earlier Barrister partnership-level proceeding. The basic facts relevant to this contention are not in dispute. The Barrister Partnership's returns for 1983 and 1984 were filed on April 15, 1984 and 1985, respectively. Under IRC § 6229(a)(1), the statute of limitations for assessing taxes "attributable to any partnership item (or affected item) for a partnership taxable year" expired three years after Barrister filed its returns, or on April 15, 1987 and 1988. The Tax Court found that the Commissioner mailed the FPAA to the tax matters partner and to petitioners on September 5, 1989, after the three-year statute of limitations expired. We have been provided no reason to disturb this finding.

[redacted] Aside from suggesting, without support in the record, that the tax matters partner probably granted an extension of the limitations period pursuant to IRC § 6229(b)(1)(B), the IRS does not refute the fact that the limitations period expired prior to its sending out the FPAA notices to Barrister and to petitioners. Instead, the IRS contends that petitioners may not raise a statute of limitations defense for the first time in their affected items proceedings, having failed to raise it at the earlier partnership level proceedings. We agree.

[redacted] As a general matter, the statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional. *See Columbia Bldg., Ltd. v. Commissioner*, 98 T.C. 607, 611, 1992 WL 101165 (1992). It follows that such a defense may be waived by a party who fails to raise it at the appropriate time.

In the context of this case, one involving the application of TEFRA, petitioners had a right to raise the partnership's statute of limitations defense in the earlier partnership-level proceeding but failed to do so. We join the Seventh Circuit, as well as the numerous lower courts that have held that, under TEFRA, a statute of limitations defense concerns a "partnership item," *see* IRC § 6231(a)(3), that must be raised at the partnership level. *See, e.g., Kaplan*, 133 F.3d at 473 (holding that district court lacked subject matter jurisdiction, in individual tax partner's refund challenge, to consider statute of limitations argument); *Kelley v. United States*, No. 97 C 3104, 1998 U.S. Dist. LEXIS 8903, at *7–10 (N.D. Ill. June 8, 1998) ("Whether the IRS assessed the ... partnership within the applicable statute of limitations period is ... a partnership item."); *Thomas v. United States*, 967 F.Supp. 505, 506 (N.D.Ga.1997) (agreeing with IRS contention that taxpayer "should not be permitted to assert a statute of limitations defense in [a partner-level proceeding] as it pertains to the FPAAs and therefore should have been prosecuted within the context of a partnership[-]level proceeding"); *Shapiro v. United States*, 951 F.Supp. 1019, 1024 (S.D.Fla.1996) (holding that res judicata barred taxpayers from raising statute of limitations defense at partner-level proceeding where taxpayers could have raised defense at partnership-level proceeding). Allowing individual taxpayers to raise a statute of limitations defense in multiple partner-level proceedings would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners. Accordingly, we hold that petitioners are barred from raising their statute of limitations defense in this partner-level, affected items proceeding.

B. Additions to Tax for Negligence

[redacted] IRC § 6653(a)(1),[2] as in effect during the years in question other than 1980, provided for additions to tax if any part of

2. The negligence addition to tax is now found at IRC § 6662. *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, §§ 7721(a), (c)(1), 103 Stat. 2106, 2395–96, 2399.

any underpayment of tax was attributable to the taxpayer's negligence. Negligence under § 6653(a) required a "lack of due care or [a] failure to do what a reasonable and prudent person would do under the circumstances." *See Goldman v. Commissioner*, 39 F.3d 402, 407 (2d Cir.1994) (quotation marks and citation omitted). Upon a finding of negligence, § 6653(a)(1) provided for an addition to tax equal to five percent of the underpayment. Section 6653(a)(2), in turn, imposed an addition of 50 percent of the interest applicable under IRC § 6601. We review for clear error the Tax Court's factual finding that taxpayers were liable for such penalties because their reliance on the advice of John Santella was unreasonable. *See Goldman*, 39 F.3d at 406.

Petitioners contend that the Tax Court erred in making this finding and failed to consider evidence that Gus and Anthony Chimblo were consumed by illness and all four taxpayers lacked the education or experience needed to evaluate the legitimacy of the tax benefits offered by the Barrister Partnership investment. They claim further that these circumstances made reliance on their trusted business advisor and accountant reasonable.

■ Despite the sympathetic facts presented by appellants, there is sufficient evidence in the record to support the Tax Court's finding of negligence. The evidence in the record did not establish that Mr. Santella was qualified to render an expert opinion to the taxpayers as to the business merits of Barrister's purported investment in the publishing business. Nor is there any explanation for why petitioners failed to voice a concern to their advisor over the absence of any generated income and the eventual complete loss of their original $25,000 investments, which turned out, not surprisingly, to amount to substantially less than the deducted losses and investment credits taxpayers ultimately claimed. *See David v. Commissioner*,

43 F.3d 788, 789–90 (2d Cir.1995) (finding taxpayers negligent despite reliance on accountants because accountants lacked knowledge of the business invested in and because partnership's "too-good-to-be-true" offering was clear indication that partnership was created only to generate tax deductions); *Goldman*, 39 F.3d at 408 (same). Accordingly, we affirm the Tax Court's finding of liability for negligence penalties under IRC § 6653(a).

### C. Additions to Tax for Substantial Understatement of Taxes

As in effect during the 1983 and 1984 taxable years, IRC § 6661(a)[3] provided that if there were a "substantial understatement" of income tax for a taxable year, a penalty of 25 percent of the amount of the underpayment attributable to the understatement would be imposed. An understatement was deemed substantial if it exceeded the greater of 10 percent of the tax required to be shown on the return or $5,000. *See* IRC § 6661(b)(1)(A).

Here, the Commissioner determined that Gus and Catherine had understated their taxes for 1983 and 1984 by $12,387 and $12,577, respectively. Under the statutory definition set forth above, these understatements were "substantial." Petitioners, however, relying on the same facts which form the basis of their challenge to the Tax Court's finding of negligence under § 6653(a), challenge the imposition of penalties under § 6661 and the Commissioner's failure to waive the penalties under IRC § 6661(c), which gives the Commissioner discretion to waive all or part of the penalty upon a showing of reasonable cause or good faith.

■ We agree with the Tax Court that the Commissioner could not have abused his discretion in declining to waive the penalty where petitioners failed to request such a waiver in the first instance. *See, e.g., McCoy Enters., Inc. v. Commissioner*,

---

**3.** This provision was repealed in 1989. *See* Omnibus Budget Reconciliation Act of 1989,

Pub.L. No. 101–239, § 7721(c)(2), 103 Stat. 2399.

58 F.3d 557, 562–63 (10th Cir.1995). Accordingly, we need not reach the merits of petitioners' contention that their reliance on the advice of their accountant constitutes a basis for waiving a substantial understatement penalty under § 6661(c).

## D. The Tax Court's Computation of Petitioners' Penalty Liabilities and Interest Overpayments

■ Since the "[i]ssues considered in a [Tax Court] Rule 155 proceeding are limited to 'purely mathematically generated computational items,'" *Harris v. Commissioner,* 99 T.C. 121, 124, 1992 WL 176438 (1992) (quoting *The Home Group, Inc. v. Commissioner,* 91 T.C. 265, 269, 1988 WL 84894 (1988)), we will review the Tax Court's computations under Rule 155 for abuse of discretion, *see Erhard v. Commissioner,* 46 F.3d 1470, 1479 (9th Cir.1995).

With respect to the Rule 155 computations, petitioners contend that the Tax Court erred in (1) calculating the amount of petitioners' interest overpayment, and (2) failing to set forth in dollar terms (rather than by reference to the percentage of the interest due on their tax deficiencies under IRC § 6601, *see* Part I.D. *supra* ) the amount of the negligence penalty assessed under IRC § 6653(a)(2). We briefly consider each contention.

### 1. Calculation of Interest Overpayments

With respect to the interest overpayment amounts, petitioners appear to contend that since the Commissioner conceded at trial that petitioners were not liable for an increased rate of interest under IRC § 6621(c) (for underpayments resulting from tax-motivated transactions), they are entitled to a return of all interest payments made to the IRS. This contention is unavailing. Though petitioners were not assessed an increased rate of interest under § 6621(c) on the amount of their underpayments for the years in question, they were still liable for (and were appropriately assessed) regular interest under IRC § 6601 on the amount of the underpayments. While any confusion on the part of petitioners is understandable given the disorienting nature of the Commissioner's computations, petitioners have provided no additional ground·for finding that the Tax Court abused his discretion in adopting the Commissioner's computations as they relate to the amounts of interest abated and set forth as overpayments of interest in the Rule 155 calculations (*see* Part I.D. *supra* ).

### 2. Negligence Penalties under IRC § 6653(a)(2)

As noted above, the amount of the penalty imposed under IRC § 6653(a)(2) is equal to 50 percent of the statutory interest due on the underlying tax underpayment attributable to negligence. Petitioners claim that it was error for the Tax Court to set forth the amounts due from petitioners in those terms, rather than specifying the amounts due in dollar terms. We disagree.

■ Often the Tax Court will be unable to specify the § 6653(a)(2) penalty in dollar terms because the underlying interest will not have been paid at the time of the Tax Court's decision and it continues to accrue to and including the date of payment. While in this case the Tax Court could have set forth the § 6653(a)(2) penalty in dollar terms because petitioners had already paid the tax deficiencies to the IRS, it was not error to fail to do so. Moreover, petitioners were not harmed by the oversight because the amounts are easily calculated by the parties by applying the 50–percent penalty rate to the amount of regular interest due on the tax deficiencies—amounts that are no longer in dispute.

## CONCLUSION

For the foregoing reasons, the decisions of the Tax Court are affirmed.