Rosalie MONAHAN, individually and in her capacity as executrix of the estate of Dean R. Monahan, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 02–12164
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 2003.

Tobias Weiss, Stamford, CT, for Petitioner–Appellant.

David E. Carmack, John A. Nolet, Appellate Section, Washington, DC, for Respondent–Appellee.

Before ANDERSON, BLACK and MARCUS, Circuit Judges.

ANDERSON, Circuit Judge:

Petitioner, Rosalie Monahan, on behalf of herself and as executrix of her husband's estate, appeals from a judgment of the United States Tax Court denying their petition for a redetermination of tax deficiency.[1] Mr. and Mrs. Monahan (hereinafter "Taxpayers") received a notice of tax deficiency in May of 1996 indicating that they owed penalties and interest stemming from an underpayment of taxes in 1982. Taxpayers thereafter filed a petition in the United States Tax Court seeking a redetermination of that deficiency. The Tax Court, relying on an agreement between the parties to "piggyback" on a decision in another case, denied their petition. We affirm.

## I. BACKGROUND

In 1982, Taxpayers invested in a partnership known as Barrister Equipment Associates Series 112 ("Barrister"). Barrister filed a partnership tax return for its 1982 taxable year in which it reported losses and qualified investment tax credits. It also reported the individual partners' distributive shares of the reported losses and credits on Schedule K–1 of its return. Taxpayers claimed these losses and credits on their 1982 jointly-filed federal income tax return. Specifically, they claimed a pass-through loss from Barrister of $15,892 and a pass-through investment tax credit of $36,921. The losses and credits claimed by Barrister and its partners were subsequently examined in an IRS audit of Barrister's tax return.

Prior to 1982, "multiple proceedings were required to address the tax treatment of partnership issues, because partnerships are not separately taxable entities and partnership income and expenses 'pass through' to the individual partners." *Chimblo v. Commissioner*, 177 F.3d 119, 121 (2d Cir.1999) (citing IRC §§ 701, 6031). In 1982, however, Congress, as part of the Tax Equity and Fiscal Responsibility Act ("TEFRA"), *see* Pub.L. No. 97–248, § 402(a), 96 Stat. 324, enacted the "unified partnership audit examination and litigation provisions of the Internal Revenue Code...." *Chimblo*, 177 F.3d at 121. The partnership provisions in TEFRA "centralized the treatment of partnership taxation issues, and 'ensure[d] equal treatment of partners by uniformly adjusting partners' tax liabilities.'" *Id.* (quoting *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir.1998)).

The centralized procedures under TEFRA apply only to "partnership items." A "partnership item" is "any item required to be taken into account for the partnership's taxable year ... [that] is more appropriately determined at the partnership level than at the partner level." IRC § 6231(a)(3). According to the regulations

---

**1.** Mr. Monahan passed away during the pendency of this appeal. His wife, who was already a party to this suit and who is the executrix of his estate, was substituted to represent the interests of the estate in this matter.

implementing TEFRA adopted by the Treasury Department, partnership items "include the income, gains, losses, deductions, and credits of the partnership," as well as "distributions received and contributions made by it." *Monti v. United States*, 223 F.3d 76, 82 (2d Cir.2001) (citing 26 C.F.R. § 301.6231(a)(3)–1).

Because the losses and credits claimed by Barrister were "partnership items," the IRS initiated its review of Barrister's return under the centralized examination and litigation procedures of TEFRA. TEFRA requires that the Commissioner of Internal Revenue provide notice to the partners at the beginning and end of partnership-level proceedings. IRC § 6223. After notifying the Barrington partners of its inquiry in 1984, the IRS determined that the claimed losses and credits were improper and that an adjustment was required. Pursuant to TEFRA, a notice of final partnership administrative adjustment ("FPAA") was then issued to the individual partners on August 21, 1989.[2]

TEFRA provides that after this notice of FPAA is given, the partnership's "tax matters partner" may contest the FPAA by filing a petition for "readjustment" of "partnership items" in Tax Court, the

Court of Federal Claims, or in the appropriate federal district court within 90 days.[3] IRC § 6226(a). Here, Barrister's tax matters partner did in fact file a petition for readjustment in Tax Court.[4] Pursuant to a stipulated decision in that court on February 17, 1995, the adjustment was sustained and the losses and tax credits were disallowed.

Because Barrister passed through all its losses and credits to the individual partners, the IRS then sought to recover the disallowed tax credits and losses from the individual partners. "Changes in the tax liabilities of individual partners which result from the correct treatment of partnership items determined at the partnership level proceeding are defined under TEFRA as 'computational adjustments.'" *Chimblo*, 177 F.3d at 121 (citing IRC § 6231(a)(6)). After the Tax Court resolved the issue of whether Barrington could claim the disputed losses and credits, the IRS issued a computational adjustment pursuant to IRC § 6225 against the individual partners, including the Taxpayers. The computational adjustment assessed against the Taxpayers here for their distributive share of the disallowed losses and

---

**2.** TEFRA provides a mechanism to suspend the statute of limitations with respect to the individual partners to dovetail with the proceedings at the partnership level. Normally, the period for assessing any tax with respect to a partnership item for a specific partnership taxable year is three years from the date the partnership return is filed. 26 U.S.C. § 6229(a). Under 26 U.S.C. § 6229(b)(1)(B), however, the partnership's tax matters partner can agree to extend that period for all partners. Once the notice of FPAA with respect to a given tax year is sent to the tax matters partner, the statute of limitations is suspended for the period in which a petition for readjustment of the partnership items under 26 U.S.C. § 6226 is being reviewed, and for one year thereafter.

**3.** A partnership's tax matters partner is usually either the person or entity designated to represent the partnership in tax matters or the general partner who had the largest interest in the partnership for the tax year at issue. *See* IRC § 6231(a)(7).

**4.** If the tax matters partner fails to file a petition within the 90–day period, any partner notified of the proceeding can then file a petition in the same venues within 60 days. IRC § 6226(b)(1). Moreover, in keeping with TEFRA's goal of resolving partnership taxation issues in a single, consolidated proceeding, any partner with an interest in the outcome of a partnership-level proceeding can participate in an action brought by the tax matters partner. *See Chimblo*, 177 F.3d at 121 (citing IRC §§ 6226(c) and (d)).

credits claimed was $41,412. That adjustment is *not* at issue in this case.

What is at issue are the additional tax consequences flowing from the computational adjustment assessed against the Taxpayers, the so-called "affected items." TEFRA defines an "affected item" as "any item to the extent such item is affected by a partnership item." IRC § 6231(a)(5). "Penalties assessed against a partner based on the partner's tax treatment of partnership items on his individual return are examples of affected items." *Chimblo*, 177 F.3d at 121 (citations omitted). Unlike disputes over losses and credits claimed by the partnership, which are addressed at the partnership level, issues relating to affected items are addressed at the individual partner level. *See Chimblo*, 177 F.3d at 121.

Here, on May 3, 1996, just four days after the IRS assessed its computational adjustment against the Taxpayers in connection with the Barrister proceeding, it sent to the Taxpayers an "affected-items notice of deficiency" with respect to their 1982 return. This notice claimed that the Taxpayers were individually liable for the following: (1) a penalty for the late-filing of their 1982 return under IRC § 6651(a)(1); (2) a penalty for negligence under IRC § 6653(a)(1) and (2); and (3) a penalty for substantial underpayment of taxes. The notice also indicated that Taxpayers were liable for interest that had accrued on the penalties, and that an increased rate of interest was necessary due to the fact that the penalties resulted from a "tax-motivated transaction." [5]

On August 5, 1996, Taxpayers filed a petition in the United States Tax Court challenging the notice of deficiency. Taxpayers raised a number of objections with respect to the actual calculation of the penalties, contending that the IRS had failed to account for certain payments that had already been made and that should have been applied to the tax year in question.[6] In addition, Taxpayers argued that the penalties should never have been assessed in the first instance. Specifically, Taxpayers argued that the negligence penalty did not apply because they reasonably relied on the advice of a professional in making the investment and claiming the losses and credits in question.

On October 16, 1997, a notice of trial was issued setting a trial date of March 16, 1998. The parties were instructed that if they could not settle the case, they were to jointly prepare a stipulation of uncontested facts in order to clarify the issues in dispute. Just prior to trial, the parties entered into a "Stipulation of Piggyback Agreement." In that agreement, Taxpayers conceded that their 1982 return was

---

5. IRC § 6621(c) provides for an increased rate of interest with respect to underpayments of taxes resulting from tax-motivated transactions.

6. On August 21, 1996, Taxpayers filed a motion in the United States Tax Court to restrain the IRS's collection of the previously assessed taxes and interest. This motion was precipitated by the IRS's issuance on August 5, 1996, of a notice to levy Taxpayers' property. In their motion, Taxpayers argued that the IRS had failed to account for a $35,000 payment that the Taxpayers submitted in 1989 for the 1982 tax year and that it had failed to explain how it arrived at the interest charges. At a hearing on September 30, 1996, the court directed the IRS to prepare a report of all assessments and payments with respect to the 1982 tax year. Though the court found the IRS's descriptions wanting with respect to the manner in which it calculated interest on the penalties, the court denied Taxpayers' motion to restrain collection on March 28, 1997. The court did, however, require the IRS to produce a second report providing greater detail as to the manner in which it calculated the applicable interest charges. That report was accepted by the court on May 8, 1997. Taxpayers are not appealing that order here.

filed late and that the penalty assessed by the IRS was properly applied. The IRS also conceded that the increased rate of interest applicable for tax-motivated transactions did not apply. The parties were not able to resolve their disagreement with respect to the other penalties at issue. Similar affected items issues, however, were being litigated by Taxpayers' counsel in another case relating to the Barrington Partnership. In their "Piggyback Agreement," the parties stated that:

> 5. All of the remaining issues in this case shall be resolved on the same basis and by application of the same formula as that which resolves the like issues in the case in this Court of *Catherine Chimblo and Estate of Gus Chimblo, Deceased, Catherine Chimblo, Executrix,* Docket No. 16546–96, (hereafter the CONTROLLING CASE), as if Petitioners in this case were the same as the taxpayers in the CONTROLLING CASE. If an issue in the CONTROLLING CASE is appealed, the final decision, whether on appeal or on remand, shall be binding on the like issue in this case.
>
> 6. A decision shall be submitted in this case when the decision in the CONTROLLING CASE becomes final under IRC § 7481.

Stipulation of Piggyback Agreement, March 16, 1998. The Tax Court relied on this agreement in granting multiple requests by the parties to continue the dispute while the parties awaited a final order in *Chimblo.*

After the petitioners' request for a writ of certiorari was denied in *Chimblo,* the IRS moved for an entry of decision. Tax-

payers, however, argued that *Chimblo* did not resolve all the issues before the court. They argued, *inter alia,* that the partnership examination procedures under TEFRA should not have been applied to Barrister's 1982 partnership tax return, the one at issue for this case, because TEFRA applies only to partnership taxable years beginning after September 3, 1982. They insisted that the exception permitting TEFRA to apply to any partnership year ending after September 3, 1982, did not apply because that provision requires the consent of the individual partners, consent they claim was never given. Thus, Taxpayers argued that the TEFRA procedures should not have been used in this case.[7] Because the applicability of TEFRA was not at issue in *Chimblo,* Taxpayers argued that the outcome in that case did not control the instant matter.

The Tax Court rejected that argument. It found that the Piggyback Agreement entered into by the parties was essentially a settlement agreement in which the parties agreed to be bound by the result in *Chimblo:*

> If Barrister for its 1982 tax year was not to be governed by the TEFRA partnership proceedings, it would have been nonsensical for [Taxpayers] to enter into the above settlement stipulation to the effect that the issues in the instant case were to be controlled by *Chimblo* ....

Tax Court's Order, Feb. 25, 2002, slip op. at 7. Relying on the agreement, the court found that the Taxpayers were bound by the result in *Chimblo* and ordered them to pay the deficiencies asserted by the IRS.

---

**7.** This argument was made for the first time after *Chimblo* was decided, after the IRS had moved for entry of decision in this case based on *Chimblo,* after Taxpayers had objected to the entry of decision on other grounds, and after the Tax Court had held a hearing on the IRS's motion and the Taxpayers' objections on January 23, 2001. The argument was first raised in a post-hearing brief filed on March 26, 2001.

**1068**

## II. ANALYSIS

 We agree with the Tax Court and conclude that the Piggyback Agreement constitutes a settlement agreement that effectively resolves all disputed issues in this matter. "Principles governing general contract law apply to interpret settlement agreements." *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir.2000) (citations omitted). The first step in construing an agreement is to determine whether the language is ambiguous. *See Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420 (7th Cir.1998) (citations omitted); *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 115–16 (5th Cir. 1996). If the agreement is found to be free of ambiguity, its meaning can be declared by the court without the use of extrinsic evidence. *See Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001). Like the court below, we believe that the intent of the Piggyback Agreement is clear and that the Taxpayers, by entering into this agreement, effectively waived their right to raise any additional defenses in this matter.

The Piggyback Agreement clearly contemplated that any outstanding issues would be resolved by relying on the outcome in *Chimblo*. Specifically, the agreement provided that:

> All of the remaining issues in this case shall be resolved on the same basis and by application of the same formula as that which resolves the like issues in the case in this Court of *Catherine Chimblo and Estate of Gus Chimblo, Deceased, Catherine Chimblo, Executrix,* Docket No. 16546–96 . . . .

Stipulation of Piggyback Agreement, March 16, 1998 (emphasis added). Taxpayers suggest that they intended to rely on *Chimblo* only to the extent that case

addressed "like" issues and that any issues not addressed in *Chimblo* would be left for resolution. We disagree. The agreement expressly provides that "all of the remaining issues in the case shall be resolved" by *Chimblo*. The agreement thus contemplates that the "remaining" issues were the same issues litigated in the *Chimblo* case, and that no other issues were being reserved by the parties. We therefore agree with the Tax Court that the Piggyback Agreement was intended to resolve all outstanding issues in the case by relying on the outcome in the *Chimblo* litigation. Although the plain meaning of the "all the remaining issues" language mandates this conclusion, it is further bolstered by paragraph 6 of the Agreement indicating that a decision in this case shall be submitted when *Chimblo* is decided, and by the parties' representations to the Tax Court seeking continuances on account of the fact that the remaining issues in the case would be resolved by *Chimblo*.

Because we find that the Taxpayers intended to be bound by the result in *Chimblo*, we express no opinion as to whether TEFRA procedures were properly applied here. Nor do we express an opinion as to the merits of the several other arguments advanced by the Taxpayers. Any such arguments were voluntarily waived when the Taxpayers entered into the aforementioned Piggyback Agreement.

## III. CONCLUSION

For the foregoing reasons, the decision of the United States Tax Court is hereby AFFIRMED.[8]

---

**8.** After examining the briefs and record in this case, we have concluded that oral argument

is unnecessary. *See* Fed. R.App. P. 34(a)(2).