T.C. Memo. 2005-172

UNITED STATES TAX COURT

WHITMAN & RANSOM, MAGED F. RIAD, TAX MATTERS PARTNER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7916-03.                Filed July 12, 2005.

Sander B. Ross, for petitioner.

Robert S. Goodman and Matthew N. Tobias, for participant
Arthur M. Handler.

Lydia A. Branche, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  This case is a partnership proceeding
subject to the unified audit and litigation procedures of the Tax
Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-
248, sec. 402, 96 Stat. 628.  Respondent issued a notice of final

partnership administrative adjustment (FPAA) to Maged F. Riad, as tax matters partner for Whitman & Ransom (W&R), determining adjustments to W&R's Form 1065, U.S. Partnership Return of Income (partnership return) for 1996. A timely petition for a readjustment of the partnership items for 1996 was filed pursuant to section 6226(a).[1] The issues for decision are whether W&R may deduct, as guaranteed payments, adjustments made to eliminate the negative capital account balances of individual partners who had withdrawn from W&R, and whether Arthur M. Handler (Handler) was a partner in W&R during 1996.

## FINDINGS OF FACT

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. We find the stipulated facts accordingly.

W&R was established in 1919 under the laws of New York as a general partnership engaged in the practice of law. From 1993 through 1996, W&R had its principal place of business in New York, New York. From 1993 through 1996, Maged F. Riad was the tax matters partner of W&R.

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended. Amounts are rounded to the nearest dollar.

W&R's partnership agreement classified partners as either equity partners, who shared in W&R's profits and losses on the basis of their partnership interests, or contract partners, whose compensation was based upon agreement. Handler, Donald Parson (Parson), Richard Tilton (Tilton), and Elliot Hahn (Hahn) were equity partners.[2] James Sargent (Sargent) had been an equity partner until April 1, 1984. He continued as a contract partner until W&R ceased doing business in 1993.

The partnership agreement was amended as of October 30, 1993 (the amendment), to provide for the liquidation and dissolution of W&R commencing November 1, 1993. The amendment provided in Section 22(k):

> As the affairs of the partnership are wound up and its debts paid and other obligations, including obligations to partners, discharged or provided for and the partners' capital including voluntary capital and interest * * * has been returned to them, any net balance remaining in the hands of the liquidating partners shall be distributed * * * to the persons who are partners on the date of dissolution, pro rata in accordance with their "points" in the partnership set forth on Schedule A to the Agreement.[3]

Certain of the former partners of W&R and members of another law firm, Breed, Abbott & Morgan, formed a new partnership, Whitman, Breed, Abbott & Morgan (WBAM), effective November 1,

---

[2] Michael Allen (Allen) and David Morse (Morse) were contract partners under the partnership agreement.

[3] Handler, Parson, Tilton and Hahn are listed on Schedule A with "points" attributed to them. Sargent is not listed on Schedule A.

1993. Handler, Parson, Tilton, Hahn, and Sargent did not become partners in WBAM (the withdrawing partners).

The amendment to the W&R partnership agreement authorized the W&R executive committee to negotiate severance agreements with any partner who did not become a partner in WBAM. The only severance agreements stipulated in the record in this case were those for Parson and Handler. Sargent's April 1, 1984, agreement is also in the record. There are no severance agreements or other documentation stipulated into the record for Hahn or Tilton.

Parson's agreement (Parson agreement) dated October 31, 1993, provided, inter alia, that he would have no further interest in W&R after October 31, 1993, that he was to be repaid his capital account balance in excess of any capital loans plus interest, that his capital loans would be paid from the remainder of his capital contribution, and that, in lieu of all rights to liquidating distributions for assets, he was to be paid $85,000. All payments to him were to be completed on or before January 1, 1995. Parson's severance agreement also stated in part:

> 8. This agreement contains all of the rights and obligations of the parties hereto and its execution by the said parties shall constitute a full and complete release each of the other of any and all claims which either party or his legal representatives and assigns may now have or in the future might have with respect to Parson's interest in the Firm.

Handler withdrew as a partner as of October 31, 1993, and negotiated a severance agreement. Handler's agreement (Handler agreement) dated April 15, 1994, stated in part:

  1.  $31,868.30 (which represents the unpaid balance of my contributed Whitman & Ransom capital in excess of my $71,602.68 outstanding capital loan due to Chemical Bank) plus all accrued and unpaid interest on my contributed capital since the date interest was last paid to me, will be paid to me on or before May 15, 1994.

  2.  Whitman & Ransom will assume and pay my capital loan to Chemical Bank as it comes due and Whitman & Ransom hereby indemnifies and holds me harmless from any claim of Chemical Bank with regard to my capital loan. In addition, on or before May 15, 1994, Whitman & Ransom will deliver to me an unconditional release and discharge by Chemical Bank.

  3.  All sums which I have previously drawn from Whitman & Ransom, including without limitation, all amounts distributed to me in respect of 1993 operations of Whitman & Ransom will be retained by me. I will have no further claims against Whitman & Ransom in respect of 1993 operations, any proceeds of the liquidation of Whitman & Ransom or otherwise, and Whitman & Ransom will have no claims against me in respect of any matters. Simultaneously with the delivery of the Whitman & Ransom check and the release from Chemical Bank referred to in the first paragraph, we will exchange General Releases, excepting only the Whitman & Ransom indemnity against any Chemical Bank claim set forth in Paragraph 1 of this letter.

Handler did not receive any payments or distributions from W&R other than those provided in the Handler agreement. On May 24, 1994, W&R also executed a separate agreement releasing Handler from any further liabilities.

W&R sent Handler a Form 1065, Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., for 1994 and 1996, but not

for 1995. Handler filed Form 8082, Notice of Inconsistent Treatment or Amended Return, disputing the allocation for both years, claiming he was no longer a partner in W&R.

Sargent, on April 1, 1984, pursuant to a written agreement (Sargent's agreement) withdrew as an equity partner, but continued on as a contract partner. Sargent was to be repaid his capital account balance of $72,000 in annual installments of $5,000 commencing March 31, 1985, and was also to receive income for life on a graduated scale not tied to profits and a death benefit. An appendix attached at the end of this opinion summarizes the capital accounts as calculated for 1993 and 1994 by W&R for each of the withdrawing partners. According to the calculations by W&R, Sargent was paid all sums due to him in 1994.

The calculations of capital accounts by W&R also establish that in 1993, Tilton, consistent with Handler, was repaid the portion of his contributed capital that was in excess of his capital loans, and his capital loans were paid off from his remaining contributed capital. W&R's calculations also establish that Hahn had made no capital contributions which would require repayment. The calculations by W&R also show that no income was allocated to any of the withdrawing partners in 1995.

On the basis of those calculations by W&R, as of December 31, 1994, each withdrawing partner had the following deficit

balance in his capital account:

| Partner | Capital Account Balance |
|---------|------------------------|
| Parson | ($30,823) |
| Handler | (186,739) |
| Hahn | (96,351) |
| Sargent | (85,470) |
| Tilton | (46,138) |

The total deficit came to $445,521.

On its 1996 partnership return, W&R elected the cash method of accounting for tax purposes. The partnership return's Schedule M-2, Analysis of Partners' Capital Accounts, reported that each withdrawing partner contributed capital equal to the amount of the withdrawing partner's negative capital account balance resulting in total capital contributed of $445,522.[4] The amount reported as capital contributed in 1996 for each withdrawing partner zeroed out each withdrawing partner's negative capital account balance.

W&R reported on its 1996 partnership return total income of $678,711 and claimed a deduction of $456,522 as "Guaranteed payments to partners".[5] W&R issued to each withdrawing partner a

_____

[4] The $1 difference between the capital account balances shown on the chart attached and that claimed on Schedule M-2 will be attributed to rounding.

[5] In addition to bringing the negative capital accounts of the withdrawing partners to zero which made up $445,522, of the claimed guaranteed payments, W&R actually paid Allen $1,000 for services rendered and $10,000 to Morse for his services with regard to the termination and liquidation of W&R's retirement plans. The payments to Allen and Morse have been conceded by

(continued...)

1996 Schedule K-1, allocating to each withdrawing partner an amount classified as a guaranteed payment equal to the deficit capital account; i.e., Parson was allocated $30,823; Handler $186,740;[6] Sargent $85,470; Tilton $46,138; and Hahn $96,351.

On March 10, 2003, respondent issued an FPAA for 1996 to Maged F. Riad as tax matters partner for W&R. Respondent disallowed the deduction for guaranteed payments, determining W&R failed to substantiate that guaranteed payments were incurred or paid in 1996 or that the amounts were deductible as ordinary and necessary expenses under section 162. In the alternative, respondent determined that Hahn, Handler, Parson, Sargent, and Tilton received taxable guaranteed payments in 1996 consistent with the treatment accorded in the partnership return.

On May 27, 2003, petitioner filed with the Court a Petition for Readjustment of Partnership Items Under Code Section 6226 praying that the Court: (1) "determine that petitioner filed a partnership return for 1996 which correctly and accurately

---

[5](...continued)
respondent to be guaranteed payments.

[6] The $1 difference between the calculated capital account and the amount deducted will be attributed to rounding. Handler reported a $137,074 long-term capital gain on Schedule D, Capital Gains and Losses, in his 1996 Federal tax return as "liquidation of p'ship interest" and paid the applicable tax. His calculation of the deficit in his capital account differed from W&R's. The treatment of the transaction by other withdrawing partners is not in the record.

treated the items at issue"; and (2) "allow as deductions from the partnership taxable income each and every payment allocated from income to the withdrawing partners as reasonable and appropriate payment properly allocated from the partnership income and taxable to these respective partners".

A copy of the FPAA in the instant case was sent to Handler. On May 22, 2003, Handler filed a petition for redetermination with the Court challenging the FPAA. On July 18, 2003, respondent filed a motion to dismiss for lack of jurisdiction on the ground that respondent did not issue a notice of deficiency to Handler for 1996. On September 29, 2003, we issued an order granting respondent's motion, but noted that Handler's remedy was to file a motion for leave to file a notice of election to participate and submit a notice of election to participate in the instant case pursuant to Rule 245. On November 3, 2003, the Court granted Handler leave to file his notice of election to participate, which sets forth Handler's contention that he was not a partner in W&R during 1996.

## OPINION

This TEFRA proceeding was brought by the tax matters partner of the law firm. Congress promulgated the TEFRA partnership unified audit and litigation provisions of sections 6221 through 6234 intending to simplify and streamline the audit, litigation, and assessment procedures with respect to partnerships and their

partners.  These provisions centralized the tax treatment of partnership items and resulted in equal treatment for partners through the uniform adjustment of each partner's tax liability in a single proceeding.  Chimblo v. Commissioner, 177 F.3d 119, 120-121 (2d Cir. 1999), affg. T.C. Memo. 1997-535; Harbor Cove Marina Partners Pship. v. Commissioner, 123 T.C. 64, 78-79 (2004).  Once an action for readjustment of partnership items is commenced by either the tax matters partner or a notice partner, any partner with an interest in the outcome of that action may participate in it.  Sec. 6226(c) and (d); Rule 245.

Pursuant to section 6221, the tax treatment of any partnership item is determined at the partnership level.  A "partnership item" is any item which must be taken into account for the partnership's taxable year to the extent that regulations prescribe it as an item more appropriately determined at the partnership level than at the partner level.  Sec. 6231(a)(3).  The regulations provide further that a partnership item not only includes those items expressly listed in the regulations, but also includes "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."  Sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs.

The determination of a guaranteed payment is a partnership item.  Sec. 301.6231(a)(3)-1(a)(2), Proced. & Admin. Regs.

Handler's claim that he was not a partner in W&R during 1996 is a partnership item because it could affect the allocation of partnership items to the other partners. Blonien v. Commissioner, 118 T.C. 541, 551 (2002).

Petitioner bears the burden of establishing that payments in liquidation of the withdrawing partners' interest in W&R were paid or incurred in 1996 which resulted in deductible guaranteed payments. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); I-Tech R&D Ltd. Pship. v. Commissioner, T.C. Memo. 2001-10, affd. sub nom. Lewin v. Commissioner, 335 F.3d 345 (4th Cir. 2003).[7] The burden of proof, or the effect of failure of proof, does not change because the case is submitted under Rule 122. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

Petitioner claims the allocation of income to zero out the negative capital accounts of the withdrawing partners resulted in guaranteed payments which are deductible by the partnership pursuant to section 736(a)(2). Respondent claims that the allocation of income could not result in guaranteed payments because there was no proof that payment had been incurred or paid in 1996, or that, if payments had been incurred or paid, they were deductible as ordinary or necessary expenses pursuant to

_____

[7] Petitioner and Handler do not argue that sec. 7491(a) applies to shift the burden of proof to respondent.

section 162(a). Alternatively, respondent determined that each of the withdrawing partners received taxable guaranteed payments in accordance with the partnership return filed by W&R.

Section 736(a) applies to payments made in liquidation of the withdrawing partners' interests.[8] The phrase "liquidation of a partner's interest" means:

> the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership. A series of distributions will come within the meaning of this term whether they are made in one year or in more than one year. Where a partner's interest is to be liquidated by a series of distributions, the interest will not be considered as liquidated until the final distribution has been made.

Sec. 1.761-1(d), Income Tax Regs.

The severance agreements signed by Parson in 1993 and by Handler in 1994 establish that each had withdrawn as members of

---

[8] Sec. 736 provides in relevant part:

SEC. 736.  PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(a) Payments Considered as Distributive Share or Guaranteed Payment.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered--

(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.

W&R by the end of 1994.  Each severance agreement required W&R to repay to the withdrawing partner the capital contributed by the withdrawing partner net of capital loans.  The capital loans of the withdrawing partner were then paid with the balance of the capital contributed, and in Handler's case W&R obtained Handler's release from the bank that lent Handler the money.  Both severance agreements contained mutual releases from any further liabilities and claims for services including a release by the withdrawing partner of any right to claim assets on liquidation.  Neither withdrawing partner was entitled to income from the partnership for any year after 1994 because each released W&R from any further claims.  The accountings prepared by W&R establish that all moneys due from W&R to Parson and Handler had been completely paid by the end of 1994.  As a result, no income was allocated to Parson or Handler in 1995.

Sargent was not an equity partner but was still owed $27,000, as of October 31, 1993, for capital he had contributed to W&R.  According to the capital accounts calculated by W&R, all moneys due him were paid in 1994.  He had no right to income as a contract partner and was not listed in the partnership agreement to share any distributions upon liquidation.

Tilton's and Hahn's severance agreements are not in the record.  We infer from the stipulations and documents before us that they were treated in the same manner as Parson's and

Handler's.  The capital accounts calculated by W&R bear this out.

Tilton was repaid his contributed capital net of capital loans in

1993, his capital loans were paid by the balance of the capital

not distributed to him, and he had no income allocated to him in

1995.  Hahn had made no capital contributions to W&R which would

have had to be repaid and had no income allocated to him in 1995.

We find:  (1) The withdrawing partners withdrew as members

of W&R by the end of 1994 and were no longer partners; (2) the

withdrawing partners' partnership interests had been completely

liquidated prior to 1996; (3) the withdrawing partners had

released W&R from any further claims prior to 1996; and (4) W&R

had released the withdrawing partners from any further claims

prior to 1996.  As a consequence there were no payments in 1996

by W&R to the withdrawing partners in liquidation of their

interests.  Further, we find that none of the withdrawing

partners, including Handler, were partners in 1996.  Because we

have found there were no payments in 1996 to the withdrawing

partners in liquidation of their interests pursuant to section

736(a)(2), we hold that no guaranteed payments to the withdrawing

partners were made.[9]

We have considered all of the parties' contentions,

arguments, and requests that are not discussed herein, and we

---

[9] Respondent has conceded that the payments of $1,000 to
Allen and $10,000 to Morse were guaranteed payments for services
rendered.

conclude that they are without merit or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

APPENDIX

| Balance as of 1/1/93 | Parson | Handler | Hahn | Sargent | Tilton |
|---|---|---|---|---|---|
| Permanent capital[1] | $128,244 | $119,084 | --- | $ 27,000 | $110,000 |
| Temporary capital[2] | 42,439 | 50,023 | $29,867 | (61,657) | 21,880 |
| **1993** | | | | | |
| Undistributed earnings | (42,439) | (50,023) | (29,867) | --- | (21,880) |
| Draws[3] | (136,275) | (111,150) | (74,250) | (30,000) | (38,089) |
| Payments for partners[4] | (14,384) | (7,451) | (2,991) | (8,491) | (4,169) |
| Loan Interest/ Principal | (5,051) | (19,313) | --- | --- | --- |
| Retirement plan | (9,934) | --- | --- | (5,600) | --- |
| Capital withdrawal | --- | --- | --- | --- | (22,000) |
| Payment | --- | 3,299 | --- | --- | --- |
| Loan repayment | --- | --- | --- | --- | (88,000) |
| **1994** | | | | | |
| Distributions | (93,509) | --- | --- | (27,000) | --- |
| Draws | (281,500) | --- | --- | --- | --- |
| Payments for partners | (652) | --- | --- | (838) | --- |
| Loan Interest/ Principal | (43,074) | (12,429) | --- | --- | --- |
| Retirement plan | (9,934) | --- | --- | --- | --- |
| Capital repayment | --- | (31,868) | --- | --- | --- |
| Assumption of loan | --- | (71,603) | --- | --- | --- |
| **1995** | | | | | |
| Payments for partners | --- | (432) | --- | (102) | --- |
| K-1 Allocation - 1993 | 142,542 | (37,380) | (20,636) | 19,733 | (8,005) |
| K-1 Allocation - 1994 | 282,769 | (17,407) | 1,526 | 1,485 | 4,045 |
| **12/31/94** | | | | | |
| Capital account balance | [5](30,823) | [6](186,739) | (96,351) | (85,470) | [7](46,138) |

[1] The partner's contribution to the capital of the firm.

[2] This account was credited or charged with the partner's share of W&R's profit or loss. After closing out the nominal accounts, i.e., Draws, Payments for partners, Retirement plan contributions, the balance was available for withdrawal by the partner.

[3] Advances to the partners. The agreement characterizes draws as advances against the current year's distributable net income.

[4] Items for a partner's personal benefit, such as health, life and disability insurance premiums, personal telephone calls, postage, photocopies, personal travel, professional subscriptions.

[5] We note that the stipulated capital account balance of ($30,823) is not the calculated amount of ($40,758) from the table. We assume this difference of $9,935 is due to an extra charge to Parson's retirement plan.

[6] We note that the stipulated capital account balance of ($186,739) varies from the actual calculated amount of ($186,650). The parties do not explain this difference.

[7] We note that the stipulated capital account balance of ($46,138) varies from the actual calculated amount of ($46,218). The parties do not explain this difference.