BARKETT, Circuit Judge,
dissenting:1
Although the majority’s interpretation of section 5.4(d) — to provide that the Construction Permit was a “Final Order”— may have captured the parties’ intent, it is only one plausible view of what their contract reflects. If the contract can be read differently, and I submit that the majority’s own opinion demonstrates that it can be, then summary judgment is inappropriate and further proceedings are necessary to determine the parties’ intent.[1] The issue is not whether my reading of the contract or the majority’s is correct; the issue is whether both are plausible. Because I believe that the contract admits of more than one interpretation, I dissent.
I
There is no disagreement that section 5.4(d) of the contract sets out three conditions, all of which must be satisfied for an FCC order to become a “Final Order” within the meaning of the contract between BCI and Susquehanna. The parties also concede that the first condition — that the FCC order at issue is “not reversed, stayed, enjoined, set aside, annulled or suspended” — is satisfied. The questions at issue in this appeal are whether the second and third conditions are also satisfied. I submit that they are not, and address them in reverse order.
A
As here relevant, the third condition is satisfied only if “the time for ... the FCC to set aside its order on its own motionf ] has expired.” Under the majority’s view, that time period is exclusively governed by *1221 47 C.F.R. § 1.117(a), which provides that “Within 40 days after public notice is given of any action taken pursuant to delegated authority, the Commission may on its own motion order the record of the proceeding before it for review.”
The majority reads this regulation as a mandatory, inflexible, jurisdictional time limit, and suggests that Susquehanna has waived any argument to the contrary. I do not believe that Susquehanna has waived such an argument,[2] and instead conclude that the FCC must have possessed the authority to set aside the Construction Permit if the Reallotment R&O was invalidated by the D.C. Circuit, as I explain more fully below. See post at 1215. Moreover, neither the majority nor BCI cite to any statute, regulation or FCC case holding that the FCC may only rescind its orders pursuant to § 1.117. That is, the majority provides no explanation for why the review contemplated by § 1.117 is exhaustive, a conclusion that hardly follows from the regulation’s own language, and that is inapposite here in light of the specific permit at issue.
Under the majority’s view, § 1.117(a) gave the FCC only forty days from the issuance of the Construction Permit to rescind it sua sponte. Yet, the Construction Permit contemplated the possibility of future invalidation pursuant to court order whenever the judicial review of the Reallotment R&O was completed. Indeed, the FCC would have had, to rescind the Construction Permit had the D.C. Circuit invalidated the Reallotment R&O. Thus, the if the majority’s reading of § 1.117(a) is correct, the FCC would have lacked the authority, after forty days, to do what the Construction Permit contemplated and what the law would have required.[3]
Indeed, the majority even notes the potential absurdity that would follow from their “unambiguous” interpretation of the contract. To wit: “If the CP had become a ‘Final Order’ before May 23, 2003, but the FCC or D.C. Circuit had overturned the Reallotment R&O, Susquehanna would have had to pay an additional $10 million, even though it could not broadcast from College Park.” Ante at 1219 n. 6. The majority nevertheless justifies such an implausible reading of the contract by asserting that, “[i]n the context of this Agreement, ... the risk Susquehanna assumed was relatively small,” because it was unlikely that the review of the Reallotment R&O would succeed. This conclusion flies in the face of the majority’s acknowledgment of both the possible risk, albeit small, *1222 and its acknowledgment of the fact that some challenges do succeed. Had the challenge succeeded in this case, would § 1.117(a) really bar the FCC from complying with the D.C. Circuit’s judgment? If not, then § 1.117(a) doesn’t mean what the majority says it means.
Even if it were true that the challenge to the Reallotment R&O was likely to fail (and I am hard-pressed to see how we can interject such post-hoc rationalization into contract interpretation), such a result hardly amplifies the extent to which the contract is unambiguous along the lines suggested by the majority. Quite to the contrary, it only bolsters the argument that the Construction Permit could not have become a “Final Order” until forty days after the judicial review of the Reallotment R&O had terminated, and I would so interpret the third condition. At the very least, it cannot be gainsaid that the Construction Permit’s language renders the third condition of section 5.4(d) ambig1 uous.
B
Even if the majority is correct that Susquehanna waived the above argument with respect to the third condition in section 5.4(d), the second condition in section 5.4(d) is likewise ambiguous. It provides that “no timely filed request for administrative or judicial review, reconsideration or stay is pending” “with respect to” the FCC order at issue. The majority concludes that, because no such review of the Construction Permit itself was pending on or before May 23, 2003, the second condition is also satisfied.
Whereas I agree that no review of the Construction Permit itself was pending on or before May 23, 2003,1 do not agree that this fact is dispositive, due to the language of the Construction Permit. Paragraph 7 of the Construction Permit expressly provides that
The grant of this permit is conditioned on the final outcome of [a pending request for review of the Reallotment R&O]. The final outcome of that proceeding may require WHMA-FM to change frequency, class, or site location. Accordingly, any construction undertaken pursuant to this permit is at the permittee’s sole risk.
(emphasis added). The Permit was thus conditioned upon the successful completion of the already pending administrative and judicial review of the Reallotment R&O, and contemplated the possibility that, if the review turned out unfavorably to Susquehanna, the Construction Permit would have to be rescinded.
The question, then, is whether the contractual language, when referring to “administrative or judicial review,” means only direct administrative or judicial review of the Construction Permit, or whether it means “administrative or judicial review” related to the Construction Permit. Whereas, in most cases, this distinction would be without a difference, the opposite is true here because the FCC’s grant of the Construction Permit was, in its own terms, conditioned upon the successful completion of review of the Reallotment R&O. That is, if the purpose of the second condition of section 5.4(d) is to ensure that no further review is pending that could jeopardize the finality of the Construction Permit, it is obviously not satisfied where, as here, the Permit is conditioned upon judicial review of other FCC orders. As such, administrative or judicial review of the Reallotment R&O is administrative or judicial review “with respect to” the Construction Permit.
At the very least, the conditional nature of the Construction Permit renders the relevant contractual language ambiguous — it could refer either to review of only the Construction Permit, or, separately, *1223 review related to the Permit, including, in this case, review of the Reallotment R&O.[4] Under the latter reading, the second condition was not satisfied.
The majority completely ignores the conditional nature of the Construction Permit. It recognizes, as it must, that the Permit “is conditioned” upon completion of the administrative or judicial review of the Reallotment R&O, but then asserts that the condition is no condition at all. Instead, according to the majority, “Paragraph 7 merely reiterates a fact known to both parties at the time of contracting— i.e., if the FCC granted Susquehanna a Reallotment R&O and a CP, but then revoked the Reallotment R&O, Susquehanna’s CP alone would not enable it to broadcast the Station from College Park.” Ante at 1218 n. 4. Thus, in one sentence, the majority concludes that the condition in the Construction Permit means nothing— it “merely reiterates a fact known to both parties at the time of contracting” — and at the same time acknowledges that it means everything, for without the Reallotment R&O, there could not be a Construction Permit. It strikes me as paradoxical to note the language of the Construction Permit and yet refuse to give the word “conditioned” any meaning at all.
Second, in rejecting the contractual language described above, the majority offers little more than an ipse dixit — that the parties would have used other language if they meant to require that the Reallotment R&O become a “Final Order” before the Construction Permit could follow suit. This assertion, however, overlooks one critical fact: The condition in the Construction Permit linking the Permit to the judicial review of the Reallotment R&O was created by the FCC, several years after the contract was formed. Thus, the parties may not have initially intended for the Construction Permit to be conditioned upon the successful completion of judicial review of the Reallotment R&O, but the FCC subsequently required as much when it issued the Permit. Whether the parties would have intended for such an external condition to control the finality of the Construction Permit is the very question that the ambiguous nature of section 5.4(d) should foreclose us from answering at this stage. Instead, the majority reads into the contractual language evidence of an intent to reject a condition that did not exist at the time, even though, as the majority itself emphasizes, “we may not ‘make a new contract for the parties under the guise of interpreting the writing.’” Ante at 1218 n. 4 (quoting Vt. Teddy Bear Co. v. 588 Madison Realty Co., 1 N.Y.3d 470, 775 N.Y.S.2d 765, 807 N.E.2d 876, 879 (2004) (internal quotation marks omitted)).
At bottom, then, the language of the Construction Permit renders section 5.4(d) ambiguous as to when the “administrative or judicial review” “with respect to” the Permit became final.
II
Even though this case is a fairly routine breach-of-contract action, and is sufficiently fact-specific that it is hard to see how our decision will have lasting relevance to *1224 anyone other than the parties, there is something deeply flawed with the majority’s methodology. I recognize, as I must, that reasonable minds can read similar contractual language differently, and that my own reading of section 5.4(d) may not be that which my colleagues would adopt, were a choice of competing interpretations the sole purpose for which our jurisdiction was invoked. Indeed, it is an inescapable truism that, in many cases that come before our court, two votes for one interpretation of language will trump one vote for a contrary view.
But this case, like some others, belongs in a different class, for our analysis is centered on the question of ambiguity— where differences in interpretation should almost always compel the same conclusion: that the relevant language is ambiguous.[5] Given that observation, I cannot agree that the majority’s reading of section 5.4(d), the shortcomings of which they admit, is the only plausible one.
The result the majority reaches today might have ultimately proven to be the correct one on remand, but only if things are true about the parties’ intent vis-a-vis the contract that we do not yet know. Especially because much turns on the language of the Construction Permit, which came well after formation of the contract, extrinsic evidence, including the parol evidence rule, would likely have proven central to resolution of the intent of the parties, and of the interaction between the Construction Permit and section 5.4(d). That is why summary judgment is manifestly inappropriate at this stage of the litigation, and that is why I must dissent.

. Although the ambiguity vel non of contractual language is a question of law, New York, reflecting a near-universal consensus, provides that summary judgment is not appropriate in a breach-of-contract action where the relevant contractual language is ambiguous, see, e.g., W. Group Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1360 (11th Cir.1999), and the ambiguity cannot be resolved on the basis of the contract alone, see, e.g., Japour v. Ed Ryan & Sons Agency, 215 A.D.2d 817, 625 N.Y.S.2d .750, 751 (1995). Ambiguity in contractual language calls into question the intent of the parties, and thus puts extrinsic evidence, ■ which must usually be considered by a jury, at issue. See Monahan v. Comm’r, 321 F.3d 1063, 1068 (11th Cir.2003).

. Although the majority avers that “in its district court briefs, Susquehanna never addressed Section 5.4(d)’s third requirement,” ante at 1217 n. 3, I find that Susquehanna's briefs are replete with references to the FCC’s authority to withdraw or otherwise invalidate the CP should judicial review of the Reallotment R&O produce an adverse result, which must necessarily turn, as explained above, on the FCC’s authority to vacate the CP after the forty-day period contemplated by § 1.117(a). True, Susquehanna does not cite § 1.117(a) expressly, but we have never suggested "that the absence of citation to statutory authority and precedent or the inartful wording of a brief necessarily will require us to conclude that a party has waived an argument.” Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A., 377 F.3d 1164, 1170 (11th Cir.2004). To the contrary, BCI’s reading of § 1.117(a) in its Response Brief, which the majority today adopts, clearly indicates that the Appellees received more than adequate notice of Susquehanna's argument, and that it was therefore not waived.

. As it turns out, the review of the Reallotment R&O was not completed until at least July 26, 2005, when the U.S. Court of Appeals for the D.C. Circuit, after denying the petition for review of the Reallotment R&O, see Small v. FCC, 161 Fed.Appx. 11 (D.C.Cir.2005), denied rehearing en banc. By then, nearly five years had elapsed since the Construction Permit had been issued.

. The majority also asserts that "the FCC's certification that 'no request for administrative or judicial review, reconsideration, or stay has been filed with respect to [the CP]' indicates the FCC did not consider [the] challenges to the Reallotment R&O as challenges to the CP as well.” Ante at 1218 n. 4 (first alteration in original). Such a conclusion hardly follows from the premise. There is absolutely no record evidence that the FCC took such a position as to the second condition of section 5.4(d). What record evidence there is with respect to the FCC’s position — to wit, the language of its Construction Permit— is to the contrary, and suggests that the FCC, in certifying that there was no request for review of the CP, was verifying only that no direct review of the CP had been sought.

. The majority responds to this analysis by suggesting that "the dissent’s critique overlooks the well-established principle of contract interpretation that ambiguity does not exist simply because the parties urge different interpretations of a contract's terms.” Ante at 1220 n. 7. Again, such an assertion, while a correct statement of the law, is entirely beside the point. The analysis contained herein amply demonstrates that the relevant contractual language reasonably admits of more than one interpretation — and that the majority’s interpretation itself may be unreasonable. In short, the ambiguity in this case "does not exist simply because the parties urge different interpretations of a contract's terms.” It exists because the contract is patently ambiguous in the relevant respects, for the reasons I have set forth above.